MUTUAL SERVICE CASUALTY INSURANCE COMPANY,
Mutual Service Life Insurance Company, Modern Ser-
vice Insurance Company and MSI Insurance
Company, Plaintiffs-Appellants,†

v.

Thomas P. BRASS, Defendant-Respondent.

Court of Appeals

*No. 00–2681. Submitted on briefs January 18, 2001.—Decided
March 14, 2001.*

## 2001 WI App 92

(Also reported in 625 N.W.2d 648.)

† Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Michael J. Hicks* of *Hills & Hicks, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*, Waukesha.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Mutual Service Casualty Insurance Company, Mutual Service Life Insurance Company, Modern Service Insurance Company and MSI Insurance Company (collectively, MSI) appeal from a circuit court order granting Thomas P. Brass's motion for summary judgment and from a circuit court order for dismissal. We agree with the circuit court that MSI's covenant not to compete is void and unenforceable because it violates the restrictions set forth in WIS. STAT. § 103.465 (1999–2000).[1] We therefore affirm.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## Facts

¶ 2. In 1993, MSI hired Brass as an insurance agent. On June 21, 1996, Brass entered into a career agent's contract with MSI. The contract contained provisions regarding Brass's activities after termination. These provisions stated that Brass was precluded from soliciting MSI customers to "lapse, cancel, or replace" any insurance contract in force with MSI in order to take that business to a competitor, for a period of not less than one year. The contract also provided that Brass not work for American National Insurance Company (American National) for three years after termination of the contract. Brass continued his employment as a career insurance agent until 1998. On December 30, 1998, Brass gave written notice to MSI of his intention to terminate his agency contract. Brass immediately began working for American National as an agent and proceeded to contact customers of MSI in this regard.

¶ 3. On January 15, 1999, MSI initiated a lawsuit against Brass claiming that he violated the noncompete terms of his agency contract. That same day, MSI petitioned the court to issue a temporary restraining order enjoining Brass from competing in any way with MSI. The circuit court entered an ex parte restraining order. Brass moved for relief from the order and the court then lifted the restraining order. On February 15, 1999, pending a hearing on MSI's motion for a temporary injunction, both parties submitted motions for summary judgment to the court. On August 31, 2000, the court denied MSI's motion and granted summary judgment in favor of Brass, dismissing MSI's claim. The court found that the contract failed because it was over broad in respect to time and geographical territory. The court found that the three

noncompete provisions respecting conduct were inter-related and that all are united for purposes of enforcement. Thus, the court held that all terms and conditions of the contract that seek to restrict Brass of the activities in the insurance business are as a matter of law unenforceable. MSI appeals.

## Standard of Review

¶ 4. This court applies the same summary judg-ment methodology as the circuit court. *Farm Credit Servs. of N. Cent. Wis., ACA v. Wysocki*, 2000 WI App 124, ¶ 6, 237 Wis. 2d 522, 614 N.W.2d 1. We first examine the complaint to determine whether it states a claim and then we review the answer to determine whether it joins a material issue of fact or law. *Id.* If we determine that the complaint and the answer join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. *Id.* If they do, we look to the oppos-ing party's affidavits to determine whether there are any material facts in dispute which entitle the oppos-ing party to a trial. *Id.*

¶ 5. Whether a covenant not to compete comports with the requirements of WIS. STAT. § 103.465 is a mixed question of law and fact. *Farm Credit Servs.*, 2000 WI App 124 at ¶ 7. Additionally, whether a restrictive covenant is reasonably necessary to protect the employer depends on the totality of the circum-stances and is a question of law to be resolved on the basis of either factual findings made by the circuit court or a stipulation of all the relevant facts by the parties. *Id.*

## Analysis

¶ 6. Wisconsin law favors the mobility of workers; therefore, a contract that operates to restrict trade or competition is prima facie suspect and will be liberally construed in favor of the employee. *Id.* at ¶ 8. Such restrictions must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires. *Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984). The legislature codified this policy in WIS. STAT. § 103.465, which provides:

> **Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

¶ 7. As noted, the agency contract between MSI and Brass contains three provisions not to compete. The issue is whether these restrictive provisions are unenforceable as applied to Brass's post-termination activities. These restrictions on post-termination activities are set forth in sections 13.E.(2) and 14 of the contract, as well as in Addendum - 3 to the contract. Section 13.E.(2) states:

E. The companies obligation to commence, and to continue, the payment of termination compensation to you are subject to the following conditions:

. . . .

(2) After termination of this contract, you do not either directly or indirectly induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with the companies; or furnish any other person or organization with the name of any policyholder of the companies so as to facilitate the solicitation by others of any such policyholder for insurance.

Failure to comply with condition (2) will result in the forfeiture of all termination compensation that remains unpaid at the time the condition is broken. . . .

Section 14 states:

**Your Activities After Termination.** For a period of one year following termination of this contract, you will not either personally or through any other person, agency, or organization (i) induce or advise any policyholder of the companies credited to your account at the date of termination to lapse, surrender or cancel any insurance coverage in force with the companies or (ii) solicit any such policyholder to purchase any insurance coverage competitive with the insurance coverages sold by the companies. In the event the "period of one year" conflicts with any statutory provision, such period shall be the period permitted by statute.

¶ 8. The final noncompete provision, found in Addendum - 3 states in pertinent part:

**Activities After Termination.** Following termination of the Agent's Contract, Agent will not either directly or indirectly, by and for himself or as an Agent for another, or through others as their Agent, engage in or be licensed as an Agent, solicitor, representative, or broker, or in any way be connected with the property, casualty, health, or life insurance business as a representative or employee of the American National Insurance Company, its subsidiaries, affiliates or related companies, within a period of 3 years from the date of the voluntary or involuntary termination of this contract.

¶ 9. Brass argues that these restrictive provisions are over broad and therefore the entire restrictive covenant agreement is unenforceable under WIS. STAT. § 103.465. We agree with Brass. The supreme court's analysis in *Streiff* provides authoritative guidance. In *Streiff*, as here, the issue was whether or not under § 103.465[2] the restrictive provisions of a particular agency contract were reasonable and enforceable. Streiff, like Brass, had entered into a career agent's agreement with his employer, American Family. The agreement provided that upon its termination, Streiff was entitled to "extended earnings" if he complied with all of the terms of the agreement. *Streiff*, 118 Wis. 2d at 604. Immediately after termination, Streiff publicly announced that he was no longer working for American Family, that he had made arrangements with·other insurers, and that he would continue to do business as

---

[2] The applicable version of WIS. STAT. § 103.465 at the time of the supreme court's decision in *Streiff v. American Family Mutual Ins. Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (1984), was the 1981–82 version. The substance of § 103.465 has remained unchanged in the subsequent versions and is substantively unchanged in the 1999–2000 version we rely on here.

an insurance agent. *Id.* Streiff also communicated with his clients who had insurance with American Family and encouraged them to buy insurance with another insurer through him. *Id.*

■

¶ 10. Following Streiff's public announcement and his communication with his American Family clients, American Family refused to pay him his "extended earnings," asserting that he had failed to comply with two clauses of the contract: section 5h and section 5i(4).[3] *Streiff*, 118 Wis. 2d at 605. By the time the matter came to court, American Family had decided not to rely on a violation of section 5i(4) as justification for nonpayment, and to concede that section 5i(4) was overly broad and unreasonable as to the

---

[3] Section 5h provided:

> After termination of this agreement, the agent shall refrain from further solicitation of policyholders for the company and from further servicing of policyholders of the company and for a period of one year after such termination anywhere within the radius of 50 miles from the location of the agent's place of business under this agreement on the date of such termination shall not induce or attempt to induce or cause another or others to induce or attempt to induce any policyholder to replace, lapse, or cancel any policy of insurance written by the company.

*Streiff*, 118 Wis. 2d at 605–06.

Section 5i(4) provided:

> If, while being paid extended earnings, the agent associates himself in any sales or sales management capacity with another insurer engaged in writing any of the kinds of insurance written by the company, and if the agent performs services in any such capacity for such other insurer within any of the States of the United States in which the company operates as a licensed insurer, the agent, from and after the date of such association, shall forfeit all his rights to extended earnings otherwise thereafter payable by the company.

*Streiff*, 118 Wis. 2d at 607.

territory described, that it violated WIS. STAT. § 103.465, and that it was unenforceable.[4] *Streiff*, 118 Wis. 2d at 607. The supreme court refused to view section 5h separately from section 5i(4), holding that the two sections must be viewed together because they constitute an indivisible covenant governing several similar types of activities and establishing several time and geographical restraints. *Streiff*, 118 Wis. 2d at 613. Any part of an indivisible covenant, even if reasonable on its own, will not be given effect if any other part is unreasonable. *Id.* at 614–15. Thus, the supreme court, having agreed with American Family's concession that section 5i(4) was overly broad and unreasonable, held the entire covenant unenforceable. *Streiff*, 118 Wis. 2d at 615.

¶ 11. We conclude, as the *Streiff* court did, that the provisions at issue are intertwined and indivisible because they govern several similar types of activities and establish several time and geographical restraints. Therefore, if one provision is unreasonable, all of the provisions are unreasonable. *Id.* at 613. However, to provide guidance in the future, we do not stop our analysis after holding one provision to be unreasonable (even though, in order to find the entire restrictive covenant unenforceable, it is only necessary for us to hold that one provision is unreasonable). Instead, we choose to address all three provisions. We hold that each of the three provisions in the agency agreement is unreasonable and under any of the provisions the indivisible covenant is unenforceable.

¶ 12. The language in sections 13.E.(2) and 14 is functionally equivalent to the language the supreme

---

[4] Section 5i(4) apparently restricted a terminated agent's employment opportunities in the insurance industry throughout this country. *Streiff*, 118 Wis. 2d at 607.

court found unenforceable for over breadth in *Streiff*. In *Streiff*, section 5i(4) restricted a terminated agent from taking an employment opportunity in the insurance industry *in any state* of the United States in which the agent's former employer operated as a licensed insurer. *Streiff*, 118 Wis. 2d at 607. Section 5h provided that the agent would forfeit extended earnings if he or she solicited *any American Family policyholders* within one year after termination and within a fifty-mile radius of the agent's place of business. *Streiff*, 118 Wis. 2d at 605.

¶ 13. Similar to the restrictive provisions in *Streiff*, sections 13.E.(2) and 14 provide that Brass must forfeit all termination compensation that remains unpaid if he solicits *any MSI policyholders*. This indicates that Brass is to have nothing to do with MSI policyholders, known or unknown, in Wisconsin or anywhere else in the world. Thus, in both sections 13.E.(2) and 14, the geographical limitation is over broad and fails under WIS. STAT. § 103.465.

¶ 14. Secondly, section 13.E.(2), as written, allows MSI to cancel termination compensation *at any time* after Brass's employment terminates. MSI argues that there is an implied time limitation of two years and one month because that is the time in which termination compensation must be paid. We infer no such limitation. There is no specific time limitation within this provision and therefore one could easily construe that MSI may seek enforcement at any point following Brass's termination. This time restriction is over broad; it fails under WIS. STAT. § 103.465.

¶ 15. Thirdly, Addendum–3 is over broad because it prohibits Brass from accepting *any type* of employment with American National. This indicates, for example, that Brass could not work for American

National as a claims adjuster or even as a janitor. It is unreasonable for MSI to prohibit Brass from holding *any position* at American National. The Addendum, in its over breadth, fails as well.

¶ 16. Finally, whether a restrictive covenant is reasonably necessary to protect the employer depends on the totality of the circumstances and is a question of law to be resolved on the basis of either factual findings made by the circuit court or a stipulation of all the relevant facts by the parties. We agree with the circuit court and hold that nowhere has MSI demonstrated that these restrictive provisions were necessary to preserve the interests of MSI. We also agree that these restrictive provisions are onerous and unreasonably dampen the economic interests of Brass to earn a living. The restrictive covenant, as a whole, is unenforceable.

¶ 17. The tenor of the MSI brief on this appeal reveals that much of MSI's concern is over American National Insurance Company's raiding of the ranks of MSI's career agents for the purpose of obtaining MSI's customer lists. MSI complains in its brief that American National "has purloined 28 MSI agents and their customer lists at a cost to MSI Insurance of $15 million to $18 million." The law, however, does not protect against the raiding of a competitor's employees. Rather, it encourages the mobility of workers. So long as a departing employee takes with him or her no more than his or her experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 214, 267 N.W.2d 242 (1978).

*By the Court.*—Order affirmed.