**JT PACKARD & ASSOCIATES, INC., Plaintiff,**

**v.**

**Anthony M. SMITH and On Power Services, Defendants.**

**No. 05–C–0169–C.**

United States District Court, W.D. Wisconsin.

April 25, 2005.

Lori M. Lubinsky, Axley Brynelson, LLP, Madison, WI, for Plaintiff.

Richard L. Bolton, Boardman, Suhr, Curry & Field, Brian E. Butler, Stafford Rosenbaum, LLP, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

Defendant Anthony M. Smith worked for approximately eight months as a regional project manager for plaintiff J.T. Packard & Associates, Inc., beginning on February 23, 2004. Plaintiff provides consulting services on commercial power needs and sells uninterruptible power supplies and other power-related parts throughout the United States. On October 13, 2004, defendant Smith left plaintiff and went to work for defendant On Power Services, which is engaged in the same business activities as plaintiff.

At the outset of Smith's employment with plaintiff, he signed a non-competition agreement and a separate non-solicitation agreement. He agreed that the agreements would be construed and enforced in accordance with Wisconsin law. In the non-solicitation agreement, he acknowledged that he would have frequent and personal contact with plaintiff's customers and that his solicitation of those customers following termination would have an adverse effect on plaintiff's business. He agreed that for one year after leaving plaintiff's employment, he would not solicit any customer of plaintiff with whom he had had contact during the year preceding his termination and that "customer" would include anyone that had purchased any goods or services from plaintiff within the year prior to his termination and any potential customer that defendant Smith had solicited on plaintiff's behalf within that year. He agreed that the one-year prohibition was reasonable and that it was intended to cover the time necessary to assign a new representative to the customer account and allow the new employee to resume the business relationship with that customer.

After defendant Smith left plaintiff and began work with defendant On Power, plaintiff wrote him to warn him that he was in violation of the agreements he had signed. Plaintiff began this suit against Smith and his new employer on March 4, 2005, in the Circuit Court for Dane County, Wisconsin. Defendants removed it to this court under the diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff is a Wisconsin corporation with its principal place of business in this state. Defendant Smith is a citizen of Georgia; defendant On Power is a Texas corporation with its principal place of business there.

The case is before the court on plaintiff's motion for a preliminary injunction to restrain defendants from allowing defendant Smith to solicit any new customers for defendant On Power that were former customers or potential customers of plaintiff, even if the new customers were ones that had followed defendant to plaintiff from his previous job or were "potential" customers that had no intention of becoming actual customers of plaintiff.

(Plaintiff has amended its complaint to delete any reference to the non-competition agreement; it seeks only to enforce its non-solicitation agreement.)

The motion raises several questions: whether the non-solicitation and non-competition agreements that defendant Smith signed are to be considered two separate and independent agreements and if so, whether a separate non-solicitation agreement such as the one that plaintiff signed is covered under Wis. Stat. § 103.465, which applies to agreements not to compete and if it is, whether it is "reasonable

and necessary" as it must be if it is to be enforceable. Plaintiff takes the position that the non-solicitation agreement is completely separate from the non-competition agreement and that it is not covered by the statute, which is limited to non-competition agreements. Defendants argue that putting different aspects of the same agreement into two different documents does not make them separate and independent agreements as a general rule. Even if it would have that effect in a specific instance, in this instance, the so-called separate non-solicitation agreement is just one aspect of a traditional non-competition agreement. They argue that if the court finds the non-solicitation agreement covered by the statute, either because it is part of the non-competition agreement or as a stand-alone agreement, it must find the agreement unenforceable because it tries to prohibit competition with potential customers in the absence of any legitimate business need to do so.

■ To obtain a preliminary injunction, plaintiff must prove that it has a likelihood of success on the merits, it is threatened with irreparable harm, the harm it would suffer if the injunction is not granted outweighs the harm to defendants if the injunction is granted, and the grant of an injunction would be in the public interest. I start with the likelihood of success.

■ It is highly unlikely that plaintiff could prevail on its suit against defendants. Common sense supports construction of the two agreements as different facets of the same agreement. They were signed on the same day and by the same persons, defendant Smith on his own behalf, and Peter Drumm, plaintiff's general manager, on behalf of plaintiff. Plt.'s Cpt., Exhs. A & B. (The exact date is unclear; the contracts refer to February 23, 2004, but seem to have been signed by Smith on February 15 and by Drumm on February 25.) Drumm referred to both agreements (and to a third, unspecified one), when he wrote Smith to tell him that his acceptance of employment with defendant On Power violated the terms of the agreements. Plt.'s Cpt., Exh. C.

The two agreements use much of the same language. They have the same purpose of preventing employees from competing with the employer if they leave their employment; solicitation of the employer's customers is a particularly undesirable form of competition from the employer's standpoint. Plaintiff makes this explicit in the agreements, both of which state: "Employer is not willing to allow its good will to become identified with Employee, or to support Employee's efforts to develop personal relationships with Employer customers, without the assurance of reasonable protection against any attempt by Employee to exploit Employer's goodwill and the relationships Employee develops with Employer customers in a manner that is inconsistent with Employer's best interest." Not only do both agreements have the same purpose but they have the same effect. Both limit defendant Smith's future employment opportunities and inhibit his mobility.

■ Wisconsin employs a "no-blue-pencil" rule, prohibiting courts from re-writing employment contracts that contain unenforceable provisions. The rule applies to divisible contracts as well as to indivisible ones. *Streiff v. American Family Mutual Ins. Co.*, 118 Wis.2d 602, 609, 348 N.W.2d 505 (1984) (holding that agent's agreement was indivisible contract even though it contained two distinct provisions: one prohibiting solicitation and servicing of company's policyholders for one year after employee's termination; the other providing for forfeiture of extended earnings if agent associated himself with a competing insurer).

■ Plaintiff's non-competition agreement does not appear to be one that Wis-

consin courts would uphold, given the state's strong presumption in favor of the mobility of workers. *See, e.g., Equity Enterprises, Inc. v. Milosch,* 2001 WI App 186, ¶ 11, 247 Wis.2d 172, 183, 633 N.W.2d 662 (Ct.App.2001) ("covenants not to compete are generally disfavored in the law"); *Mutual Service Casualty Ins. Co. v. Brass,* 2001 WI App 92, ¶ 8, 242 Wis.2d 733, 738, 625 N.W.2d 648, 652 (Ct.App.2001) (contracts that operate to restrict trade or competition are construed liberally in favor of employee).

The non-competition agreement imposes an eighteen-month ban on defendant Smith's association with any organization or person that competes with plaintiff in the portions of plaintiff's business in which Smith provided services and in the geographical area in which he provided those services. Although the agreement does not provide any more specification of the geographical area at issue, it is likely to include at least the United States and possibly foreign countries, given the nature of the work that plaintiff performs. For example, both parties agree that Delta Airlines was a customer of plaintiff while defendant Smith was working for plaintiff. Neither side has suggested that the work that Smith did for this customer was limited to one airport or similar facility. Defendant Smith may have provided services for many installations in many parts of the country and possibly overseas.

■ Wisconsin courts will enforce non-competition agreements that attempt to limit employee competition within an area as large as the entire United States, "only if the restrictions imposed are reasonably necessary for the protection of the employer or principal." § 103.465. Although the restriction on defendant Smith does not necessarily extend to the entire United States, it could, depending on where defendant provided services and how the re-

striction is interpreted. The agreement is unhelpful in that regard. If defendant Smith answered a call from a customer in San Diego, California, and provided advice to that customer or helped it with a service it needed, does the agreement bar him from soliciting customers in San Diego? In southern California? In the entire state of California? In the western part of the United States? The agreement does not make clear how far it would extend and how the geographic range would be established.

Plaintiff's non-competition agreement with defendant Smith bars him from associating in any way with any competing employer in any geographical area in which Smith provided services while working for plaintiff. It is over broad in this respect because it bars defendant Smith from being associated *in any way* with a competing organization. Wisconsin courts have found similar restrictions over broad. *Id.* at ¶ 15, 242 Wis.2d at 743–44, 625 N.W.2d at 654–55 (finding non-competition agreement over broad because it prohibited former agent from accepting any type of employment with competitor, whether it be as claims adjuster or janitor).

Even if the non-competition and non-solicitation agreements are read as two independent agreements, it is probable that Wisconsin courts would view the non-solicitation agreement as covered by Wis. Stat. § 103.465. The statute applies to covenants not to compete; solicitation of a former employer's customers is a prime form of competition. Restrictions on solicitation restrain the employee's opportunities to move to new employment just as restrictions on other forms of competition do.

Assuming that § 103.465 applies to the non-solicitation agreement, I am persuaded that Wisconsin courts would not find the restrictions of that agreement "reasonably necessary for the protection of the

employer or principal." § 103.465. The agreement bars defendant Smith from soliciting any customer of plaintiff with which defendant had contact within one year of his termination, which includes any potential customer that defendant had solicited. This is over broad because it restricts defendant Smith from servicing any customer he tried but failed to solicit while he was working for plaintiff, even if that potential customer went to defendant On Power while Smith was still working for plaintiff or refused to become a customer of plaintiff despite plaintiff's best efforts.

I conclude that plaintiff does not have a realistic chance of prevailing ultimately on its claim that its non-solicitation agreement is reasonable and necessary for its protection and that defendants have violated the agreement. Further, I cannot find that plaintiff does not have an adequate remedy at law if it should prevail on its claim. Plaintiff is correct that it might be difficult to compute the damages to which it would be entitled if it can prove its claim because of the difficulty in calculating the goodwill and market opportunities it will lose if no preliminary injunction issues. However, I am not persuaded that the difficulties are insurmountable.

Balancing the harms, I cannot say that the potential injury to plaintiff if it has to compete with defendants is greater than the potential injury to defendant Smith if he cannot work in his chosen field. Finally, I conclude that the public interest would not be disserved by the denial of plaintiff's motion.

### ORDER

IT IS ORDERED that plaintiff J.T. Packard's motion for a preliminary injunction is DENIED.