THE MANITOWOC COMPANY, INC.,
Plaintiff-Respondent,†

v.

John M. LANNING, Defendant-Appellant.

Court of Appeals

*No. 2015AP1530. Submitted on briefs February 10, 2016.
—Decided August 17, 2016.*

2016 WI App 72

† Petition for Review Filed.

696

697

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John E. Murray* of *Lindner & Marsack, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joel S. Aziere* and *Suzanne M. Glisch* of *Buelow Vetter Buikema Olson & Vliet LLC* of Waukesha.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. HAGEDORN, J. This case concerns whether a nonsolicitation of employees (NSE) provision is a

restrictive covenant subject to and enforceable under WIS. STAT. § 103.465 (2013–14).[1] The Manitowoc Company, Inc. entered into an agreement with employee John Lanning that prohibited him from directly or indirectly soliciting, inducing, or encouraging any Manitowoc employee "to terminate their employment" with Manitowoc or to "accept employment with any competitor, supplier or customer of Manitowoc." After Lanning left Manitowoc to work for a competitor, Manitowoc alleged that he worked with his new employer to woo several of Manitowoc's employees in violation of the NSE provision. Manitowoc filed suit, and the circuit court granted summary judgment to Manitowoc and awarded it attorneys' fees and costs.

¶ 2. Although Lanning takes issue with multiple aspects of the circuit court's judgment, the only question we need address is whether WIS. STAT. § 103.465 governs the NSE provision, and if so, whether it is enforceable. We conclude that § 103.465 does govern the NSE provision and that it is not enforceable under the law. Accordingly, we reverse the judgment of the circuit court and its award of attorneys' fees and costs.

## I. Background

¶ 3. Manitowoc is a manufacturer comprised of two divisions: a food service equipment division and a crane division. Lanning began his career with Manitowoc in 1985 in the crane division where he worked as an engineer for over twenty-five years. Lanning was successful, knowledgeable, and well-connected within Manitowoc. He was a "big fish" and held in high esteem in the company.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

¶ 4. In 2008, Lanning signed an agreement addressing confidential information, intellectual property, and nonsolicitation of employees.[2] Paragraph two of the agreement contained the NSE provision:

> I agree that during my Employment by Manitowoc and for a period of two years from the date my Employment by Manitowoc ends . . . I will not (either directly or indirectly) solicit, induce, or encourage any employee(s) to terminate their employment with Manitowoc or to accept employment with any competitor, supplier or customer of Manitowoc.[3]

Lanning left Manitowoc in January 2010 to work for SANY America—a direct competitor with Manitowoc's crane division.

¶ 5. Manitowoc argues that Lanning engaged in a number of actions over the next two years in violation of the NSE provision. Lanning communicated with at least nine Manitowoc employees in connection with possible employment at SANY. In addition to more casual conversations and emails,

---

[2] There were actually multiple agreements over the course of Lanning's employment with Manitowoc. The 2008 agreement explicitly superseded all previous agreements; it is the one the parties agree applies here.

[3] The provision further explains that the term "solicit, induce or encourage" includes but is not limited to the following:

> (a) initiating communications with an employee of Manitowoc relating to possible employment; (b) offering bonuses or additional compensation to encourage employees of Manitowoc to terminate their employment therewith and accept employment with a competitor, supplier or customer of Manitowoc; (c) referring employees of Manitowoc to personnel or agents employed or engaged by competitors, suppliers or customers of Manitowoc; or (d) referring personnel or agents employed or engaged by competitors, suppliers or customers of Manitowoc to employees of Manitowoc.

Lanning took a Manitowoc employee to lunch as part of a SANY recruitment effort, took another on a plant tour in China, and participated in an interview of a third employee. Lanning also informed multiple Manitowoc employees that their skills were needed at SANY and identified several as potential job candidates to SANY's recruiter.

¶ 6. The parties do not dispute these basic facts on summary judgment—though their characterization of these facts paints two very different pictures.[4] Even so, by participating in SANY's recruitment efforts and initiating communications with Manitowoc employees, Lanning more or less admits to violating the NSE

---

[4] Manitowoc claims that Lanning and its competitor SANY conspired together in a concerted, surreptitious, and malicious effort to recruit Manitowoc's best employees, ultimately resulting in three Manitowoc employees leaving to work for SANY. Manitowoc insists these actions were willful and deceptive, forcing it to take protective action and incur significant expense in doing so.

Lanning tells a very different story. He portrays himself as merely a passive participant in recruitment efforts. The Manitowoc employee he took to lunch? He was a personal friend, and conversation centered primarily on their families, only briefly touching on whether Lanning was happy working for SANY. The job interview? Lanning points out that he had barely known or interacted with that employee and was brought in for the telephone interview by the main SANY interviewers to discuss the applicant's familiarity with crawler cranes. In fact, that interview call was the only interaction the two had from the time Lanning left Manitowoc to the time the employee joined SANY.

These competing efforts at portraiture are not relevant to the legal question before us: whether the NSE provision is subject to Wis. Stat. § 103.465, and if so, whether it is enforceable.

provision. His challenge here centers on whether the provision is enforceable.

¶ 7. In light of Lanning's violation of the NSE provision, Manitowoc filed suit and, after extensive discovery, moved for summary judgment. The circuit court, in a reasonable and thoughtful written decision, granted Manitowoc's motion on the merits, concluding that the NSE provision was enforceable even if it was subject to Wis. Stat. § 103.465. The circuit court then proceeded with a trial to determine Manitowoc's damages, ultimately awarding Manitowoc $97,844.78 in damages, $1 million in attorneys' fees, and $37,246.82 in costs.

¶ 8. Lanning appeals from this judgment. He claims that the NSE provision is overbroad and unenforceable under Wis. Stat. § 103.465, and that the circuit court erroneously exercised its discretion by awarding Manitowoc over $1 million in attorneys' fees and costs. He also challenges certain circuit court findings regarding causation and damage mitigation.

## II. Discussion

¶ 9. The legal questions before us are whether Wis. Stat. § 103.465 governs the enforceability of the NSE provision, and if so, whether it is in fact enforceable against Lanning. We conclude that the NSE provision is subject to § 103.465, and further, that it does not comport with the law and is therefore unenforceable. As a result, we reverse the circuit court's judgment and its award of Manitowoc's attorneys' fees and costs.

¶ 10. The interpretation of the agreement and whether it is enforceable are questions of law this

court reviews de novo. *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 18, 319 Wis. 2d 274, 767 N.W.2d 898. We also review de novo whether the circuit court properly granted summary judgment. *Id.* Summary judgment is appropriate where there is no genuine dispute about material facts and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2); *Driver v. Driver*, 119 Wis. 2d 65, 69, 349 N.W.2d 97 (Ct. App. 1984). When we review a circuit court's decision on summary judgment, we apply the same method of analysis as the circuit court. *Driver*, 119 Wis. 2d at 69.

### Enforceability Generally

¶ 11. Wisconsin Stat. § 103.465 governs the enforceability of covenants not to compete:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

*Id.*

¶ 12. Embodied in this statute is the notion that covenants not to compete are disfavored and must withstand close scrutiny. *Star Direct*, 319 Wis. 2d 274, ¶ 19. The legislature has determined that such cov-

enants are prima facie suspect because they restrain trade. *See id.* To enforce this policy, the legislature calls upon the judiciary to determine whether a covenant not to compete is "reasonably necessary" to protect the employer. WIS. STAT. § 103.465. In carrying out our interpretive role, we must construe contract language in favor of the employee and are not to construe restrictive covenants as extending "beyond their proper import or farther than the contract language absolutely requires." *Star Direct*, 319 Wis. 2d 274, ¶ 19.

■■■

¶ 13. Though not comprehensive, case law has provided a framework to guide employers, employees, and courts in determining whether a restrictive covenant complies with WIS. STAT. § 103.465. In order to be enforceable,

> [a] restrictive covenant must: (1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy.

*Star Direct*, 319 Wis. 2d 274, ¶ 20. If any portion of the restrictive covenant fails to satisfy the above-enumerated factors, the entire covenant is unenforceable. *Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 471, 309 N.W.2d 125 (Ct. App. 1981). The employer, not the employee, bears the burden of demonstrating that the restriction is reasonable. *Star Direct*, 319 Wis. 2d 274, ¶ 20. The reasonableness of a covenant is a fact-specific inquiry depending on the totality of the circumstances. *Fields Found.*, 103 Wis. 2d at 471. This makes sense because the reasonableness of

the asserted employer interest and the impact on the employee will depend on factors like the nature of the employer's business and the competitive risk posed by the employee.

## Wɪs. Sᴛᴀᴛ. § 103.465 Applies to the NSE Provision

■

¶ 14. As a preliminary matter, we address Manitowoc's insistence that its nonsolicitation provision is not subject to Wɪs. Sᴛᴀᴛ. § 103.465. The statute itself proclaims that it applies to a "covenant . . . not to compete with his or her employer . . . during . . . or after" one's employment. *Id.* The provision also calls such covenants a "restraint." *Id.* Case law has made clear that § 103.465 applies to any covenant between an employer and an employee that "seeks to restrain competition" or operates as a "trade restraint." *See Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112, 579 N.W.2d 217 (1998) (holding that a nondisclosure provision is subject to § 103.465).

¶ 15. Manitowoc agrees with this basic framework, but protests that the NSE provision is not meant to limit competition or trade. Lanning also agrees with the framework, but argues that the NSE provision does restrain trade, and adds that courts have applied this notion liberally to various kinds of provisions no matter how labeled. The parties have not cited any Wisconsin court cases deciding the applicability of Wɪs. Sᴛᴀᴛ. § 103.465 to a nonsolicitation of employees provision like the one here.[5]

¶ 16. Manitowoc's argument is difficult to understand. In defending its substantive reasonableness,

---

[5] In *Equity Enters., Inc. v. Milosch*, 2001 WI App 186, ¶ 2, 247 Wis. 2d 172, 633 N.W.2d 662, the noncompete provision provided in part that an employee could not:

Manitowoc vigorously maintains that the NSE provision only protects Manitowoc against unfair competition by Lanning and does not apply more broadly. So concerned was it about Lanning's purported violations of the agreement that it spent over $1 million in attorneys' fees and costs to keep Lanning and his new employer—a direct competitor of Manitowoc—from "systematically poaching" its employees. In the next breath, Manitowoc argues that the NSE provision is not about competition at all, and therefore not subject to Wis. Stat. § 103.465. Even accepting the legitimacy of legal arguments in the alternative, Manitowoc cannot have it both ways.

¶ 17. "A bargain is in restraint of trade when its performance would limit competition in any business . . . ." *Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 821, 235 N.W.2d 690 (1974) (citation omitted). It is no leap of logic to conclude that a provision aimed at restricting a former employee from "systematically poach-

> Entice, or attempt to entice, any sales representative of [Equable] . . . to terminate his employment or sever his relationship with [Equable], or to become associated with . . . or employed by another person, firm or entity engaged in a business competitive with that conducted by [Equable], whether or not Employee is affiliated with such person, firm or entity.

*Id.* (Alteration in original.)

Unlike the NSE provision in the case at bar, the above provision only applied to sales representatives (not all employees) and only prohibited enticement to join competitive businesses (not suppliers or customers). But it did similarly prohibit the solicitation of employees. The parties in *Equity Enterprises, Inc.*, however, admitted this was subject to Wis. Stat. § 103.465, and thus that decision does not settle the matter now before us.

ing" the valuable and talented employees of his former employer is a restraint of trade. Lanning may not, among other things, compete with Manitowoc by attempting to recruit Manitowoc's best employees. While the NSE provision does not circumscribe Lanning's own employment opportunities, it nevertheless limits how Lanning—now employed by a direct competitor—can compete with Manitowoc.[6] In short, the NSE provision does not allow for the ordinary sort of competition attendant to a free market, which includes recruiting employees from competitors. Regardless of how it is labeled, we hold that the NSE provision must comply with WIS. STAT. § 103.465. *See Tatge*, 219 Wis. 2d at 112 ("[I]t would be an exercise in semantics to overlook []§ 103.465 merely because . . . the agreement is not labeled a 'covenant not to compete.' ").[7]

---

[6] The NSE provision was not an isolated agreement. It was one provision in a broader "Agreement Regarding Confidential Information, Intellectual Property and Non-Solicitation of Employees." Along with the NSE provision, the agreement imposed postemployment restrictions on sharing confidential information and trade secrets, and assigned Manitowoc ownership for certain inventions and intellectual property relating to the work with Manitowoc.

[7] *See also Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶ 16, 258 Wis. 2d 28, 654 N.W.2d 830 (applying WIS. STAT. § 103.465 to a no-hire agreement between two employers); *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1052–53 (E.D. Wis. 2006) (applying § 103.465 to restrictions prohibiting an employee from disclosing confidential information); *Corporate Express Office Prods., Inc. v. Brown*, No. 00–C-608–C, unpublished slip op. at 8, 21 (W.D. Wis. July 18, 2001) (applying § 103.465 to a nonsolicitation provision prohibiting an employee from "assisting anyone in encouraging an employee of [the employer] to sever employment").

## The NSE Provision Violates Wis. Stat. § 103.465

¶ 18. When reviewing the enforceability of a restrictive covenant under Wis. Stat. § 103.465, Manitowoc argues that agreements should not be deemed unenforceable simply because hypothetical applications may be overbroad. Rather, Manitowoc asks us to focus on what actually happened in this case. Manitowoc's approach is not consistent with how courts undertake this analysis.

¶ 19. An overbroad provision is not reasonable and enforceable simply because the employer enforces it in a reasonable manner. In other words, even if restricting the behavior alleged in this case is permissible under Wis. Stat. § 103.465, that does not mean the NSE provision itself is legally sufficient. If Manitowoc were correct, a restrictive covenant containing an otherwise permissible limitation but extending, by its plain terms, for an unreasonable period of time would be enforceable if the employer (or court) only enforced it during a reasonable time. This is precisely what § 103.465 was enacted to prevent.[8] The statute provides that if a covenant is unreasonable, it is not enforceable at all, "even as to any part . . . that would be a reasonable restraint." Id.

[8] Wisconsin Stat. § 103.465 was a legislative response to the supreme court's decision in *Fullerton Lumber Co.* where the court held that an indivisible restrictive covenant lasting for ten years could still be enforced for a reasonable time. *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 65, 319 Wis. 2d 274, 767 N.W.2d 898.

¶ 20. When determining whether a restrictive covenant is overbroad, our cases demonstrate that we look not at the particular facts or circumstances of a case, but to the plain language of the agreement itself. *See Mutual Serv. Cas. Ins. Co. v. Brass*, 2001 WI App 92, ¶¶ 2, 15, 242 Wis. 2d 733, 625 N.W.2d 648, *overruled on other grounds by Star Direct*, 319 Wis. 2d 274 (finding that a restrictive covenant was overbroad because it prohibited an insurance agent from working for a competitor in any capacity, even as a janitor, when the insurance agent in fact went to work for a competitor in the same capacity); *Equity Enters., Inc. v. Milosch*, 2001 WI App 186, ¶ 15 n.4, 247 Wis. 2d 172, 633 N.W.2d 662 (concluding that a provision prohibiting an employee from doing business with any customers the employee serviced during his fifteen years of employment, including one he hypothetically only serviced during his first weeks of employment, was overbroad). Thus, if the text of the NSE provision restrains trade impermissibly, it is unenforceable even if the acts complained of in this action could have been proscribed by a more narrowly written and permissible restrictive covenant.

¶ 21. In defense of the NSE provision, Manitowoc contends that it has a legitimate interest "in preventing its former employee from systematically poaching its employees." Lanning is a "big fish," and Manitowoc argues that his knowledge of the employee base and special relationships pose a unique threat to Manitowoc's business. Manitowoc believes the NSE provision is narrowly tailored to protect it from the threat Lanning poses because it only addresses "competitors, customers, and suppliers, as opposed

to every single business enterprise or activity," leaving Lanning otherwise free to compete against Manitowoc.

¶ 22. The problem is that the actual terms of the restraint are far broader than Manitowoc would like to admit. The NSE provision covers a wide swath of activity. It prohibits direct or indirect solicitation, inducement, or encouragement of any Manitowoc employee to either work for a competitor, supplier, or customer of Manitowoc, or to terminate his or her own employment. It takes no lively imagination to see that this restricts an incredible breadth of competitive and noncompetitive activity.

¶ 23. Among its evident applications, the clause applies to Lanning's solicitation, inducement, or encouragement of "any employee"—a high-profile and skilled colleague to be sure, but also an entry-level factory worker, a salesperson working in the food service division (in which Lanning never worked), and yes, even a part-time janitor at the Pennsylvania production facility. This restriction applies even if Lanning knows the employee exclusively through church or his local bowling league or his nephew's baseball team. The restriction applies even if Lanning has never met, heard of, or interacted with the employee. These are not strained hypotheticals; they are the plain application of the words of the provision itself.

¶ 24. The NSE provision also extends to contacts that seem loosely connected, if at all, to Manitowoc's competitive interests. It restricts Lanning from encouraging a Manitowoc friend to take a job with a noncompetitive employer simply because that employer happens to be a Manitowoc customer. This provision would seemingly prohibit Lanning from serv-

ing as a job reference for a former colleague who applies to work for a competitor, supplier, or customer of Manitowoc, or maybe who seeks to change industries altogether. The restriction even prohibits Lanning from encouraging a former colleague and friend to retire ("terminate their employment with Manitowoc") to spend more time with his family.

¶ 25. Courts have found similar restrictions unenforceable. In *Brass*, the employee was an insurance agent and signed an agreement purporting to prohibit him from working for a particular competing agency in any capacity for a period of three years. *Brass*, 242 Wis. 2d 733, ¶¶ 2, 8. We concluded that the provision was overbroad because it prevented the employee from working for the competing agency in any position— even a janitor. *Id.*, ¶ 15. We held that the provision cut too broad and was far more restrictive than necessary to protect the employer. *Id.*

¶ 26. Similarly, in *Star Direct*, our supreme court invalidated a provision preventing an employee from working for another business that did not compete with the employer. *Star Direct*, 319 Wis. 2d 274, ¶ 58. The provision prevented the employee from engaging in any business "substantially similar to" the employer's. *Id.*, ¶ 53. The court noted that this provision prevented the employee from working for a substantially similar business that was nevertheless not in competition with the employer. *Id.*, ¶ 55. It reasoned that "[w]hile having [the employee] engage in a noncompetitive substantially similar business might plausibly have some de minimus or insubstantial affects on Star Direct, the interests do not rise to the level of being reasonably necessary for its protection." *Id.*, ¶ 56.

¶ 27. Under Wis. Stat. § 103.465, Manitowoc has the burden to prove that the NSE provision is necessary for its protection, pointing to "a protectable interest justifying the restriction." *Star Direct*, 319 Wis. 2d 274, ¶ 20. Restraining "ordinary competition of the type a stranger could give" is not a protectable interest. *Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157, 163, 98 N.W.2d 415 (1959). Rather, there must be some special facts and circumstances rendering the covenant reasonably necessary for the employer's protection. *Id.*

¶ 28. Manitowoc's stated interest—protecting itself from Lanning's specialized knowledge of its talent base and his relationships with employees—does not justify the broad ban on the solicitation, inducement, or encouragement of any employee. Manitowoc is a large company with two divisions. Lanning worked in the crane division; his expertise and connections would not extend to all of Manitowoc's employees. With respect to at least some of Manitowoc's employees, Lanning posed no greater threat to Manitowoc than any other competitor or employer.

¶ 29. To meet its burden, Manitowoc would also need to show that the provision serves some legitimate and unique competitive interest by prohibiting the encouragement, solicitation, or inducement of any employee to accept employment not only with competitors, but also customers or suppliers. Starbucks, for example, is one of its customers. Lanning's nonsolicitation provision would be violated if he encouraged a young former colleague to leave Manitowoc and work part time as a barrista at Starbucks to pursue graduate studies. Manitowoc must show how such a provision is reasonably necessary for its protection. Focus-

ing instead on Lanning's actions, Manitowoc mounts no defense to the propriety of these plain applications of the NSE provision.

¶ 30. Like the provisions struck down in *Brass* and *Star Direct*, Manitowoc has offered no reason why it needs protection from the solicitation of employees to work for businesses that do not compete with it or in positions that do not pose a unique competitive risk. In short, Manitowoc has drafted a provision that requires it to prove that it has a protectable interest in preventing Lanning from encouraging *any* employee to leave Manitowoc for *any* reason, or to take *any* job with *any* competitor, supplier, or customer. Manitowoc has not met its burden. Because the NSE provision is not justified by a protectable interest, we need not analyze the remaining factors necessary to uphold a restrictive covenant.[9] Accordingly, the NSE provision is contrary to Wis. Stat. § 103.465 and unenforceable.

## III. Conclusion

¶ 31. Although Manitowoc articulates legitimate, even protectable, concerns, the provision it drafted is far too sweeping to withstand the close scrutiny we give such restrictive covenants. The NSE provision is unenforceable and the circuit court erred by denying Lanning's motion for summary judgment and granting Manitowoc's. We therefore reverse the

---

[9] As discussed in ¶ 13, supra, a restrictive covenant must:

(1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy.

*Star Direct*, 319 Wis. 2d 274, ¶ 20.

judgment of the circuit court and its award of attorneys' fees and costs, and we remand the case for the circuit court to enter summary judgment in favor of Lanning.

*By the Court.*—Judgment reversed and cause remanded with directions.