# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1530 |
| COMPLETE TITLE: | The Manitowoc Company, Inc.,<br>　　　　Plaintiff-Respondent-Petitioner,<br>　　v.<br>John M. Lanning,<br>　　　　Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 371 Wis. 2d 696, 885 N.W.2d 798
PDC No:  2016 WI App 72 - Published

| | |
|---|---|
| OPINION FILED: | January 19, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 5, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| 　COURT: | Circuit |
| 　COUNTY: | Manitowoc |
| 　JUDGE: | Gary L. Bendix |

| | |
|---|---|
| JUSTICES: | |
| 　CONCURRED: | R.G. BRADLEY, J. concurs, joined by GABLEMAN, J. and KELLY, J. (opinion filed). |
| 　DISSENTED: | ROGGENSACK, C.J. dissents, joined by ZIEGLER, J. (opinion filed). |
| 　NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Suzanne M. Glisch*, *Joel S. Aziere*, and *Buelow Vetter Buikema Olson & Vilet*, *LLC*, Waukesha.  There was an oral argument by *Joel S. Aziere.*

For the defendant-appellant, there was a brief filed by *Oyvind Wistrom* and *Lindner & Marsack*, *S.C.*, Milwaukee.  There was an oral argument by *Oyvind Wistrom.*

**2018 WI 6**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1530
(L.C. No. 2011CV216)

STATE OF WISCONSIN       :       IN SUPREME COURT

**The Manitowoc Company, Inc.,**

     **Plaintiff-Respondent-Petitioner,**

  **v.**

**John M. Lanning,**

     **Defendant-Appellant.**

**FILED**

**JAN 19, 2018**

Diane M. Fremgen
Acting Clerk of Supreme
Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals reversing a judgment of the Circuit Court, Manitowoc County, Gary L. Bendix, Judge.[1] The circuit court granted the motion of The Manitowoc Company, Inc., the plaintiff, for summary judgment and denied the cross-motion for summary judgment of the defendant, John M. Lanning. After a bench trial on damages, the circuit court awarded

---

[1] Manitowoc Co., Inc. v. Lanning, 2016 WI App 72, 371 Wis. 2d 696, 885 N.W.2d 798.

Manitowoc Company $97,844.78 in damages, $1,000,000 in attorney fees, and $37,246.82 in costs against Lanning.

¶2 The court of appeals reversed the circuit court judgment in favor of Manitowoc Company. It concluded that Lanning's non-solicitation of employees provision (sometimes referred to herein as an NSE provision) imposed by Manitowoc Company as part of Lanning's employment agreement is governed by Wis. Stat. § 103.465 (2013-14) and that it is unenforceable under the statute.[2]

¶3 The non-solicitation of employees provision prohibits Lanning from directly or indirectly soliciting, inducing, or encouraging any employee of Manitowoc Company to terminate his or her employment with Manitowoc Company or to accept employment with a competitor, supplier, or customer of Manitowoc Company. The scope of the non-solicitation of employees provision includes all of Manitowoc Company's 13,000 world-wide employees regardless of an employee's position within Manitowoc Company or the employee's connection to Lanning.

¶4 Two issues of law are presented on the cross-motions for summary judgment:[3]

  1. Does Wis. Stat. § 103.465, which explicitly refers to a "covenant not to compete," apply to the non-solicitation

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[3] For a discussion of cross-motions for summary judgment, see Ziegler Co., Inc. v. Rexnord, Inc., 139 Wis. 2d 593, 595 n.1, 407 N.W.2d 873 (1987).

of employees provision prohibiting Lanning from soliciting, inducing, or encouraging any employee of Manitowoc Company to terminate his or her employment with Manitowoc Company or to accept employment with a competitor, supplier, or customer of Manitowoc Company?

2. If Wis. Stat. § 103.465 governs Lanning's non-solicitation of employees provision, is the provision enforceable under § 103.465?[4]

---

[4] Manitowoc Company set forth five issues in its petition for review as follows:

1. Whether Wis. Stat. § 103.465, which refers to a "covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency," governs non-solicitation of employees ("NSE") clauses, which do not prohibit any individual from competing with his/her former employer.

2. Assuming, arguendo, Wis. Stat. § 103.465 governs NSE clauses, whether an NSE clause, which does not prohibit competition with the former employer, should be evaluated under the same legal standard(s) as a non-compete clause, and whether the Court of Appeals erred in equating a 2-year restriction on the solicitation of employees, which permitted any individual to leave the employer and work for a competitor (as Lanning did in this case), to a 3-year restriction from working for a competitor in any capacity.

3. Assuming, arguendo, Wis. Stat. § 103.465 governs NSE clauses, whether Lanning's NSE provision, which permitted him to work for Manitowoc's largest Chinese competitor, unreasonably restrains trade.

4. Assuming, arguendo, Wis. Stat. § 103.465 governs NSE clauses, whether Lanning's NSE provision, which

(continued)

3

¶5   In response to the first issue, the particular terms of the non-solicitation of employees provision at issue in the instant case do not appear to have been analyzed by any prior Wisconsin court decision.[5]   We conclude, as prior cases have concluded, that although Wis. Stat. § 103.465 explicitly refers to a covenant not to compete, the plain meaning of § 103.465 is

---

merely prevented Lanning from raiding Manitowoc employees, is "reasonably necessary" to protect Manitowoc's legitimate business interests.

5. Assuming, arguendo, Wis. Stat. § 103.465 governs NSE clauses, whether the constitutional right to contract may be infringed upon through the use of aggrandized hypothetical scenarios rather than the undisputed facts of a case to invalidate an NSE clause in a contract between an employer and employee.

The two issues we address are dispositive and in effect address the issues Manitowoc Company set forth.

[5] In Equity Enterprises, Inc. v. Milosch, 2001 WI App 186, 247 Wis. 2d 172, 633 N.W.2d 662, the court of appeals analyzed an employment agreement containing restrictive covenants.  In one of those covenants, the employee agreed that he would not, after the termination of his employment, entice any sales representative of the employer to terminate his or her employment with the employer.  However, the parties in Milosch did not raise or dispute whether Wis. Stat. § 103.465 applied to the employee's non-solicitation provision.  The court of appeals' decision did not discuss or rule on the validity of the employee's non-solicitation provision.  Instead, it invalidated another restrictive covenant because it was overbroad.  That provision of the agreement barred the employee from doing business with customers of the employer after termination of employment.  Thus, the court of appeals invalidated the entire agreement.

Lanning's contention that Milosch determined that a non-solicitation of employee provision was governed by § 103.465 is not persuasive.

not limited to a covenant in which an employee agrees not to compete with a former employer.[6] This court has explicitly stated that "it would be an exercise in semantics to overlook § 103.465 merely because [a provision] of the agreement is not labeled a 'covenant not to compete.'"[7] Rather, § 103.465 has been applied to agreements viewed as restraints of trade.

¶6 Indeed, this court has acknowledged that "the explicit purpose of Wis. Stat. § 103.465, as plainly stated in the statute, is to invalidate covenants that impose unreasonable restraints on employees" and that § 103.465 "essentially deals with restraint of trade . . . regardless of whether a restriction is labeled a 'non-disclosure' provision or a 'covenant not to compete.'"[8]

¶7 The court has repeatedly recognized that a restraint of trade may take many forms. The court has interpreted Wis. Stat. § 103.465 as applying not only to traditional covenants in

---

[6] See, e.g., Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 98 N.W.2d 415 (1959).

[7] Tatge v. Chambers & Owen, Inc., 219 Wis. 2d 99, 112, 579 N.W.2d 217 (1998).

[8] Heyde Cos., Inc. v. Dove Healthcare, LLC, 2002 WI 131, ¶13, 258 Wis. 2d 28, 654 N.W.2d 830 (citing Tatge, 219 Wis. 2d at 111-12; see also Gary Van Zeeland Talent, Inc. v. Sandas, 84 Wis. 2d 202, 218-21, 267 N.W.2d 242 (1978).

which an employee agrees not to compete with a former employer,[9] but also to other terms of an agreement including provisions barring the solicitation of the employer's customers or former customers,[10] non-disclosure/confidentiality agreements between employers and employees,[11] and a no-hire provision between two employers.[12]

¶8 These cases clearly demonstrate that the application of Wis. Stat. § 103.465 depends upon whether the particular terms of the agreement constitute a restraint of trade by restricting competition or imposing an unreasonable restraint on

---

[9] "A covenant [not to compete] typically provides that the employee shall not work for a competitor or set up a competitive business for himself for a specified period of time in a designated geographical area." Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 626 (1960).

For an example of such a traditional covenant not to compete, see, e.g., Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 98 N.W.2d 415 (1959).

[10] See, e.g., Star Direct, Inc. v. Dal Pra, 2009 WI 76, ¶¶19-41, 319 Wis. 2d 274, 767 N.W.2d 898 (holding that a provision barring solicitation of an employer's customers was a restraint of trade under Wis. Stat. § 103.465).

[11] See, e.g., Gary Van Zeeland Talent, Inc. v. Sandas, 84 Wis. 2d 202, 218, 267 N.W.2d 242 (1978) (concluding that a non-disclosure/confidentiality agreement between an employer and employee was an unreasonable restraint of trade governed by Wis. Stat. § 103.465).

[12] Heyde Cos., 258 Wis. 2d 28, ¶¶13-16 (concluding that an agreement between two employers in which one employer agreed not to hire employees of the other employer was a restraint of trade because "[t]he effect of the no-hire provision [was] to restrict" employees' employment opportunities).

6

employees.  These cases focused on the <u>effect</u> of the restraint rather than its label.[13]

¶9  We conclude that Lanning's non-solicitation of employees provision restricts Lanning's ability to engage in the ordinary competition attendant to a free market, specifically restricting Lanning's freely competing for the best talent in the labor pool.  In addition, the limitation on Lanning also affects access to the labor pool by a competitor of Manitowoc Company (including Lanning's current employer, SANY America).  Accordingly, we conclude that Lanning's non-solicitation of employees provision is a restraint of trade governed by Wis. Stat. § 103.465.

¶10  With regard to the second issue, we conclude that Lanning's non-solicitation of employees provision is unenforceable under Wis. Stat. § 103.465.  It does not meet the statutory requirement that the restriction be "reasonably necessary for the protection of the employer."  Wis. Stat. § 103.465.

¶11  Accordingly, we affirm the decision of the court of appeals and remand the cause, as did the court of appeals, to the circuit court with instructions to enter judgment in favor of Lanning.

I

---

[13]  <u>Heyde Cos.</u>, 258 Wis. 2d 28, ¶¶13-14.

¶12 To the extent that the facts affect the issues before the court, no genuine dispute about material facts is presented.

¶13 Manitowoc Company is a manufacturer with two divisions: a food service equipment division and a construction crane division. Lanning began his employment with Manitowoc Company in 1985 as a chief engineer in Manitowoc Company's crane division. Lanning worked for Manitowoc Company for over 25 years. Lanning was successful, knowledgeable, and well-connected within Manitowoc Company.

¶14 In 2008, Lanning signed an employment agreement with Manitowoc Company that included provisions relating to confidential information, intellectual property, and non-solicitation of employees.[14] The validity of only the non-solicitation of employees provision is challenged in the instant case.

¶15 Lanning terminated his employment with Manitowoc Company effective January 6, 2010. Beginning on January 8, 2010, Lanning became the director of engineering for SANY America, a direct competitor with Manitowoc Company's crane division. Manitowoc Company claims that Lanning engaged in a number of actions that violated the non-solicitation of employees provision.

---

[14] Over the course of his employment, Lanning signed multiple employment agreements with Manitowoc Company. The 2008 employment agreement explicitly superseded all previous agreements, and the parties agree that the 2008 employment agreement is applicable in the instant case.

¶16 For example, Manitowoc Company asserts that Lanning communicated with at least nine Manitowoc Company employees about potential employment opportunities at SANY, took one Manitowoc Company employee out to lunch in connection with SANY recruitment efforts, took another Manitowoc Company employee on a tour of a SANY crane manufacturing plant in China, and participated in a third Manitowoc Company employee's job interview with SANY.

¶17 Lanning's non-solicitation of employees provision prohibits him, for two years following termination of his employment, from soliciting, inducing, or encouraging any Manitowoc Company employee to terminate his or her employment with Manitowoc Company or to accept employment with a competitor, supplier, or customer of Manitowoc Company.

¶18 The circuit court concluded that even if Lanning's non-solicitation provision is viewed as a restriction on trade or competition subject to Wis. Stat. § 103.465, the provision was reasonable and enforceable under the statute.

¶19 The court of appeals concluded that Lanning's non-solicitation of employees provision was a restraint of trade governed by Wis. Stat. § 103.465.[15] It further concluded that because the provision was not reasonable, it was not enforceable under the statute. The court of appeals reversed the judgment of the circuit court in favor of Manitowoc Company.

_____

[15] Manitowoc Co., 371 Wis. 2d 696, ¶17.

II

¶20 We first address the standard of review. This court applies the same method of analysis to a motion for summary judgment as does a circuit court. Summary judgment is appropriate where, based on the pleadings, depositions, interrogatories, and affidavits on file, there is no genuine dispute as to any material fact, and a party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2); Star Direct, 319 Wis. 2d 274, ¶18; Belding v. Demoulin, 2014 WI 8, ¶13, 352 Wis. 2d 359, 843 N.W.2d 373; Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987); Mut. Serv. Cas. Ins. Co. v. Brass, 2001 WI App 92, ¶4, 242 Wis. 2d 733, 625 N.W.2d 648, overruled on other grounds by Star Direct, 319 Wis. 2d 274, ¶78 n.12.

¶21 The instant case requires us to interpret both a statute and a written contract. The interpretation and enforceability of both a statute and a written contract ordinarily present questions of law that this court determines independently of the circuit court and court appeals while benefiting from the analyses of these courts. See, e.g., Moustakis v. DOJ, 2016 WI 42, ¶16, 368 Wis. 2d 677, 880 N.W.2d 142; Star Direct, 319 Wis. 2d 274, ¶18; Streiff v. Am. Family Mut. Ins. Co., 118 Wis. 2d 602, 603 n.1, 348 N.W.2d 505 (1984).

III

¶22  The first issue of law presented is whether Wis. Stat. § 103.465 applies to Lanning's non-solicitation of employees provision.

¶23  We begin our discussion by setting forth the texts of Wis. Stat. § 103.465 and Lanning's non-solicitation of employees provision.

¶24  Wisconsin Stat. § 103.465 is broadly entitled "Restrictive covenants in employment contracts" and refers explicitly to a covenant by an employee not to compete with the employer during or after the term of employment.  It states as follows that "any covenant" described in § 103.465 imposing an "unreasonable restraint is illegal" even as to any part of the covenant that would be a reasonable restraint:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal.  Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465.

¶25  The agreement between Manitowoc Company and Lanning is entitled "Agreement Regarding Confidential Information, Intellectual Property and Non-Solicitation of Employees."  The non-solicitation of employees provision at issue does not use the words "covenant not to compete."  Rather, Lanning agrees not

11

to solicit, induce, or encourage any employee(s) of Manitowoc Company to terminate their employment with the Company. The provision states as follows:

> I agree that during my Employment by Manitowoc and for a period of two years from the date my Employment by Manitowoc ends for any reason, including termination by Manitowoc with or without cause, I will not (either directly or indirectly) solicit, induce or encourage any employee(s) to terminate their employment with Manitowoc or to accept employment with any competitor, supplier or customer of Manitowoc. As used herein, the term "solicit, induce or encourage" includes, but is not limited to, any of the following: (a) initiating communications with an employee of Manitowoc relating to possible employment; (b) offering bonuses or additional compensation to encourage employees of Manitowoc to terminate their employment therewith and accept employment with a competitor, supplier or customer of Manitowoc; (c) referring employees of Manitowoc to personnel or agents employed or engaged by competitors, suppliers or customers of Manitowoc; or (d) referring personnel or agents employed or engaged by competitors, suppliers or customers of Manitowoc to employees of Manitowoc.

¶26 Lanning's non-solicitation of employees provision does not conform to "textbook examples" of a covenant not to compete in which the employee is prohibited from engaging in competition with a former employer. In contrast to a traditional covenant not to compete, Lanning is free to obtain employment with a competitor of Manitowoc Company. Manitowoc Company employees are free to terminate employment with Manitowoc Company, be employed by any other employer, and compete with Manitowoc Company. Lanning is restricted from "poaching" any Manitowoc

12

Company employee.[16] The provision restricting Lanning restrains competition by limiting a competitor's access to the labor pool.

¶27 Manitowoc Company argues that Wis. Stat. § 103.465 applies only to traditional covenants not to compete wherein an employee agrees not to engage in business activities that are competitive with those of the employer. As we stated previously, however, our cases reveal that § 103.465 has been applied to provisions that constitute restraints of trade other than traditional covenants not to compete.

¶28 Time and again, the case law has focused on the effect of the provision of an employment agreement rather than its label to determine whether it constitutes a restraint of trade governed by Wis. Stat. § 103.465.[17]

¶29 The cases state that "the explicit purpose of Wis. Stat. § 103.465, as plainly stated in the statute, is to invalidate covenants that impose unreasonable restraints on employees"[18] and that § 103.465 "essentially deals with restraint of trade . . . regardless of whether a restriction is labeled a 'non-disclosure' provision or a 'covenant not to compete.'"[19]

----

[16] Manitowoc Co., 371 Wis. 2d 696, ¶17.

[17] See supra ¶¶6-8.

[18] Wisconsin Stat. § 103.465 "evidences a strong public policy against enforcement of trade restraints which are determined to be unreasonable upon all employees". Tatge, 219 Wis. 2d at 114-15.

[19] Heyde Cos., 258 Wis. 2d 28, ¶13 (citing Tatge v. Chambers & Owen, Inc., 219 Wis. 2d , 99, 111-12, 579 N.W.2d 217 (1998); Gary Van Zeeland Talent, 84 Wis. 2d at 218-21.

Whether a particular agreement constitutes a restraint of trade is based not upon how the agreement is labeled but upon the effect of the agreement on employees and competition.[20]

¶30 Accordingly, courts have applied Wis. Stat. § 103.465 to traditional non-compete agreements, non-solicitation of customer agreements, and non-disclosure/confidentiality agreements between employers and employees as well as a no-hire provision between two employers.[21]

¶31 In 1995,[22] 1997,[23] and 2015,[24] the legislature amended Wis. Stat. § 103.465 but chose not to amend the statute in such

---

[20] Heyde Cos., 258 Wis. 2d 28, ¶¶13-14 ("[A] restrictive covenant may be made between employers that acts as a covenant not to compete on the employees. . . . The effect of the no-hire provision is to restrict the employment of Greenbriar's employees; it is inconsequential whether the restriction is termed a 'no-hire' provision between Dove and Greenbriar or a 'covenant not to compete' between Greenbriar and its employees.").

[21] See supra ¶¶6-8.

[22] As adopted in 1957, Wis. Stat. § 103.465 (1957-58) read as follows:

> A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

Ch. 444, Laws of 1957.

(continued)

14

a way as to undermine the court's broad application of the statute. Legislative acquiescence to a judicial construction of a statute gives rise to a presumption, albeit sometimes a weak one, that an earlier judicial construction should stand.[25] This precept of statutory interpretation reinforces the principle of

---

A 1995 amendment replaced "his employer" with "his or her employer." 1995 Wis. Act 225, § 347.

[23] Wisconsin Stat. § 103.465 was amended by 1997 Wis. Act 253, § 81. The changes are shown in italics:

A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or *after the termination of that employment or agency*, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, *described in this subsection*, imposing an unreasonable restraint is illegal, void and unenforceable even as to *any part* of the covenant or performance *that* would be a reasonable restraint.

The note to § 81 of the Act explains: "Replaces nonspecific references with specific references for greater readability and conformity with current style."

[24] In 2015, Wis. Stat. § 103.465 was amended by the Legislative Reference Bureau pursuant to § 35.17(2) to correct obvious nonsubstantive errors. The words "in this subsection" were changed to "in this section." See 2015 Wis. Act 197, § 51.

[25] See, e.g., Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶124 n.76, 356 Wis. 2d 582, 850 N.W.2d 866; Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶43 n.21, 341 Wis. 2d 607, 815 N.W.2d 367; Wenke v. Gehl Co., 2004 WI 103, ¶¶32, 33, 35, 274 Wis. 2d 220, 682 N.W.2d 405; State v. Hansen, 2001 WI 53, ¶38, 243 Wis. 2d 328, 627 N.W.2d 195; Reiter v. Dyken, 95 Wis. 2d 461, 471-72, 290 N.W.2d 510 (1980).

stare decisis and supports the interpretation of the statute set forth herein.[26]

¶32 Manitowoc Company maintains that the non-solicitation provision does not restrict competition by Lanning or restrain employees. Lanning and Manitowoc Company employees are free to work for anyone, including a competitor, and competitors are "free to hire <u>any</u> Manitowoc employee(s) to take <u>any</u> job at their company . . . . By the plain language . . . it was not Manitowoc's intent to prevent any employees from leaving or

---

[26] In interpreting and applying Wis. Stat. § 103.465, the concurrence renounces reliance on prior judicial interpretations of the statute, interprets the statute anew, and would overrule the decision in <u>Heyde</u>, a decision interpreting the statute that has stood for 15 years and has never been repudiated by the legislature. Neither Manitowoc Company nor Lanning has asked this court to overrule <u>Heyde</u>.

The concurrence advocates an interpretive rule significantly different from the generally accepted rule that when a court interprets a statute, prior judicial interpretations of the statute become "as much a part of the statute as if plainly written into it originally." <u>State ex rel. Klinger v. Baird</u>, 56 Wis. 2d 460, 468, 202 N.W.2d 31 (1972). <u>See also</u> <u>Champlin v. State</u>, 84 Wis. 2d 621, 624, 267 N.W.2d 295 (1978) (quoting <u>Klinger</u>); <u>Clean Water Action Council of N.E. Wis. v. DNR</u>, 2014 WI App 61, ¶16, 354 Wis. 2d 286, 848 N.W.2d 336 (quoting <u>Klinger</u>).

Ordinarily (and in the instant case), this court should not reach beyond the issues presented in the petition for review and should not overrule a prior judicial decision that the parties accept as pertinent, without at least affording the parties an opportunity to brief the issue of the continued validity of the decision. This approach to judicial interpretation of a statute comports with the important concepts of precedent and finality. Stare decisis, although not an absolute rule, is important to promote finality and predictability in the law and is undermined by the concurrence's reasoning.

joining another employer, and/or to restrict their mobility or ability to practice and earn a living in their chosen field. Rather, the intent of the clause was to limit a key employee like Lanning from raiding Manitowoc employees. . . ."[27] According to Manitowoc Company, "the harm [to the Company] is the loss of the employee itself——not any potential competition that employee could provide against Manitowoc after leaving."[28]

¶33 The effect of Lanning's non-solicitation provision is to prevent Lanning and a Manitowoc Company competitor from competing fully with Manitowoc Company in the labor pool by soliciting Manitowoc Company employees. The provision prevents Lanning from taking steps to persuade a Manitowoc Company employee to leave Manitowoc Company, which would limit the ability of Lanning and other Manitowoc Company employees from working together in the future. Thus, the provision prevents employees of Manitowoc Company from having complete information regarding employment opportunities elsewhere. It limits a potentially valuable professional resource Lanning would otherwise have regarding resources in the labor market. Although the law encourages the mobility of workers, Lanning's non-solicitation of employees provision hinders the mobility of

---

[27] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 31-32 (emphasis in brief).

[28] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 39-40.

Manitowoc Company employees.[29]  This court has stated that "the fundamental right of a person to make choices about his or her own employment is well-established."[30]

¶34  In  sum,  the  cases  have  interpreted  Wis.  Stat. § 103.465  as  including  more  than  the  "textbook  example"  of  an employee covenant not to compete with his or her employer.  In the  instant  case,  the  effect  of  Lanning's  non-solicitation  of

---

[29] "The  law,  however,  does  not  protect  against  the  raiding of  a  competitor's  employees.  Rather,  it  encourages  the  mobility of workers."  Mut. Serv. Cas. Ins. Co. v. Brass, 2001 WI App 92, ¶17, 242 Wis. 2d 733, 625 N.W.2d 648, overruled on other grounds by Star Direct, 319 Wis. 2d at ¶78 n.12; see also Genzyme Corp. v. Bishop, 460 F. Supp. 2d 939, 947 (W.D. Wis. 2006) ("[T]he public policy underlying Wis. Stat. § 103.465 is that Wisconsin law favors the mobility of workers.").

[30] Heyde Cos., 258 Wis. 2d 28, ¶22.

As  the  Supreme  Court  has  recognized,  the  ability  to  make choices about one's own employment "is an elementary part of the rights of personal liberty . . . ."  Prudential Ins. Co. of Am. v. Cheek, 259 U.S. 530, 536 (1922).

Judge Learned Hand wrote regarding an employer's ability to offer  a  job  to  a  competitor's  employee  and  the  employee's ability to take the job as follows:

> Nobody  has  ever  thought,  so  far  as  we  can  find,  that in  the  absence  of  some  monopolistic  purpose  every  one has  not  the  right  to  offer  better  terms  to  another's employe,  so  long  as  the  latter  is  free  to  leave.  The result  of  the  contrary  would  be  intolerable,  both  to such  employers  as  could  use  the  employe  more effectively  and  to  such  employes  as  might  receive added  pay.  It  would  put  an  end  to  any  kind  of competition.

Triangle Film Corp. v. Artcraft Pictures Corp., 250 F. 981, 982 (2d Cir. 1918).

18

employees provision is clear.  The provision restricts one form of competition with Manitowoc Company.  It restricts Lanning (and any employee of Manitowoc Company) from freely competing against Manitowoc Company in the labor market by insulating any Manitowoc Company employee from Lanning's solicitations.

¶35 We agree with the reasoning of the court of appeals that Lanning's non-solicitation of employees provision is a restraint of trade governed by Wis. Stat. § 103.465.  As the court of appeals explained:

> It is no leap of logic to conclude that a provision aimed at restricting a former employee from "systematically poaching" the valuable and talented employees of his former employer is a restraint of trade.  Lanning may not, among other things, compete with Manitowoc by attempting to recruit Manitowoc's best employees.  While the NSE provision does not circumscribe Lanning's own employment opportunities, it nevertheless limits how Lanning——now employed by a direct competitor——can compete with Manitowoc.  In short, the NSE provision does not allow for the ordinary sort of competition attendant to a free market, which includes recruiting employees from competitors.

Lanning, 371 Wis. 2d 696, ¶17.

¶36 Our reasoning and conclusion are in accord with federal courts interpreting Wisconsin law[31] and with cases in

---

[31] In Corporate Express Office Products, Inc. v. Brown, 2001 WL 34381111 (W.D. Wis. July 18, 2001), the non-solicitation of employees provision was similar to Lanning's provision.  The federal district court held that although the employer had an interest in retaining experienced employees, the non-solicitation provision was not necessary to advance that interest.  Corporate Express, 2001 WL 34381111, at *7-8.

other jurisdictions interpreting non-solicitation of employees provisions.[32] These decisions have determined that similar non-solicitation of employees provisions constitute restraints of trade. These decisions are not binding on this court but are persuasive.

¶37 For the reasons set forth, we conclude that the non-solicitation of employees provision at issue is a restraint of trade governed by Wis. Stat. § 103.465.

IV

¶38 Having concluded that Wis. Stat. § 103.465 applies to Lanning's non-solicitation of employees provision, we address

---

[32] See, e.g., Golder Assocs., Inc. v. Edge Envt'l, Inc., 2007 WL 987458 (D. Colo. 2007), (finding that a similar non-solicitation of employees agreement was governed by a Colorado statute prohibiting "any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor" because "the non-solicitation clause at issue in this case could be interpreted to as [sic] having the effect of preventing the [employees] from working together at [competitor] and, therefore, it is covered by restraint [sic] of trade prohibition contained in [the statute]"); Schmersahl, Treloar & Co., P.C. v. McHugh, 28 S.W.3d 345, 348-51 (Mo. Ct. App. 2000) (holding that a non-solicitation of employees provision was a restraint of trade because "[c]ompetition in the marketplace encompasses competition in the labor market" and the provision can be used to restrict the flow of competitive information about the labor market, including the availability of opportunities and offers of employment to an employer's at-will workforce and has the effect of reducing competition in the labor market and is a restrictive covenant); Lazer Inc. v. Kesselring, 823 N.Y.S.2d 834, 836-39 (N.Y. Sup. Ct. 2005) (concluding that "a covenant not to solicit former co-employees is a species, albeit a limited one, of a covenant not to compete in the broad sense . . .").

the second issue of law presented, namely, whether the provision is enforceable under § 103.465.

¶39 Beginning in Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 162-67, 98 N.W.2d 415 (1959), and continuing in the case law thereafter, the court has interpreted Wis. Stat. § 103.465 as "establishing five prerequisites that a restrictive covenant must meet in order to be enforceable."[33]

¶40 The five "prerequisites" that must be met are as follows.  The restraint must:

(1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee;

(2) provide a reasonable time limit;

(3) provide a reasonable territorial limit;

(4) not be harsh or oppressive as to the employee; and

(5) not be contrary to public policy.

Star Direct, 319 Wis. 2d 274, ¶20.

¶41 If Lanning's non-solicitation of employees provision fails to satisfy even one of these "prerequisites," the entire non-solicitation of employees provision is invalid.  By enacting Wis. Stat. § 103.465, the legislature made a policy choice to place the burden of drafting a reasonable restrictive covenant on the employer, who often wields greater bargaining power and

---

[33] Star Direct, 319 Wis. 2d 274, ¶20.

is generally in a better position to show that a restraint is no broader than is necessary to protect the employer's business.[34]

---

[34] In <u>Streiff v. American Family Mutual Insurance Co.</u>, 118 Wis. 2d 602, 608-09, 614-15, 348 N.W.2d 505 (1984), the supreme court described the background of Wis. Stat. § 103.465 in 1957. It was enacted at the suggestion of a legislator who was critical of our decision in the second <u>Fullerton Lumber</u> case, <u>Fullerton Lumber Co. v. Torborg</u>, 274 Wis. 478, 80 N.W.2d 461 (1957), in which the court "blue-penciled," that is, judicially modified, an unreasonable restrictive covenant by giving it effect to the extent that it might be reasonable:

> The legislator wanted a restraint containing overly broad and invalid provisions to be struck down in its entirety; he apparently did not want the court to give effect to an unreasonable restraint to the extent it might be reasonable.  The objection to the "Torberg" practice, as the legislator noted, is that it tends to encourage employers possessing bargaining power superior to that of the employees to insist upon unreasonable and excessive restrictions, secure in the knowledge that the promise will be upheld in part, if not in full.
>
>     * * * *
>
> Courts and commentators have engaged in debate over the equities of giving effect to reasonable aspects of restraints in a covenant.  An argument for giving effect to reasonable aspects of a restraint is the business need for restrictive covenants and the difficulty for larger businesses to tailor each covenant to the particular requirements of the individual employee.  A principal argument against giving effect to reasonable aspects of a restraint is that the employer can fashion ominous covenants which affect the mobility of employees because of their *in terrorem* effect on employees who respect contractual obligations and their effect on competitors who do not wish to risk legal difficulties.  At least where the restraint is indivisible, it is clear that our legislature has balanced the employer's business needs and the employee's interest in personal liberty and has, by the adoption of sec. 103.465, opted not to

(continued)

22

¶42 We begin with the first prerequisite, that is, that the Manitowoc Company must have a protectable interest justifying the restriction on Lanning's employee's activities.

¶43 Manitowoc Company asserts that it has an interest in protecting itself from "the loss of the employee(s) it trained and invested time and capital in, and the institutional understanding, experience, and intellectual capital they possess."[35]

¶44 The text of the non-solicitation of employees provision bars solicitation by Lanning of "any employee(s)" to terminate employment with Manitowoc Company. The court interprets and applies this language in accordance with the maxims adopted for the interpretation of restrictive covenants.

---

give effect even to so much of the covenant as would be a reasonable restraint. The legislature has in sec. 103.465 instructed the court as to the equities between the parties. Under sec. 103.465 if an indivisible covenant imposes an unreasonable restraint, the covenant is illegal, void, and unenforceable even as to so much of the covenant as would be a reasonable restraint.

See also Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 648 n.76 (1960) ("The employer, having a fuller 'picture' of the company's interests and needs than any employee, should be in a much better position to show that a restraint is no more burdensome than needed to protect the employer's legitimate interest. The employee, on the other hand, would find it difficult to show that the restrain is unreasonable.").

[35] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 39.

¶45  A restraint of trade to which Wis. Stat. § 103.465 applies is interpreted in a reasonable way to give the words their plain meaning, to give effect where possible to the entire provision, and to avoid absurd results.  Star Direct, 319 Wis. 2d 274, ¶62.  Within this maxim, restrictive covenants are disfavored at law, subject to close scrutiny, and are read in favor of the employee.  Star Direct, 319 Wis. 2d 274, ¶62.

¶46 The words "any employee" in the non-solicitation of employees provision prohibits Lanning from soliciting every one of Manitowoc Company's 13,000 world-wide employees.  The words "any employee" mean, in common parlance, every employee.  The court has in a number of cases explained that a phrase modified by the word "any" indicates broad application.[36]

¶47 The non-solicitation provision contains no limitations based upon the nature of the employee's position within Manitowoc Company.  No limitations are based upon Lanning's personal familiarity with or influence over a particular employee.  There is no limit based upon the geographical location in which the employee works.

---

[36] State v. Jensen, 2010 WI 38, ¶29, 324 Wis. 2d 586, 782 N.W.2d 415 (noting in its interpretation of Wis. Stat. § 971.19(12) that "a phrase modified by the word 'any' indicates broad application.") (internal quotation marks and citation omitted); Marotz v. Hallman, 2007 WI 89, ¶25, 302 Wis. 2d 428, 734 N.W.2d 411 (the word "any" modifying "person or "organization" in Wis. Stat. § 632.32(5)(i)1. indicates broad application); Burbank Grease Servs., LLC v. Sokolowski, 2006 103, ¶22, 294 Wis. 2d 274, 717 N.W.2d 781 (the broad dictionary definition of word "any" is used to define "any" in Wis. Stat. § 134.90(6)(b)2.).

¶48 Manitowoc Company asserts a protectable interest in protecting its investment of time and capital involved in recruiting, training, and developing its employee base from "poaching" by a "former employee who ha[s] full awareness of the talent and skill set of said employee base."[37] At trial, Manitowoc Company presented evidence to establish the financial and non-monetary costs and harm it experienced in losing and trying to replace employees.[38] Manitowoc Company asserts that the loss of employees harms the Company regardless of whether the employee goes to work for a competitor or a non-competitor of Manitowoc Company.

¶49 The argument that Manitowoc Company has a protectable interest in maintaining its entire workforce flouts the generally recognized principle that the law "does not protect against the raiding of a competitor's employees."[39] The cases

---

[37] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 39.

[38] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 13-14.

[39] Brass, 242 Wis. 2d 733, ¶17, overruled on other grounds by Star Direct, 319 Wis. 2d 274, ¶78 n.12.; see also Gary Van Zeeland Talent, 84 Wis. 2d at 214 ("[S]o long as a departing employee takes with him no more than his experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse.").

(continued)

and literature explain that ordinarily an employer's protectable interest is limited to retaining top-level employees, employees who have special skills or special knowledge important to the employer's business, or employees who have skills that are difficult to replace.[40]    Ordinarily, a stranger may entice

---

The Gary Van Zeeland Talent case cites Abbott Laboratories v. Norse Chemical Corp., 33 Wis. 2d 445, 463, 147 N.W.2d 529 (1967) (setting forth the factors a court must consider when determining whether certain material qualifies as a "trade secret") and K.H. Larsen, Annotation, Former employee's duty, in absence of express contract, not to solicit former employer's customers or otherwise use his knowledge of customer lists acquired in earlier employment, 28 A.L.R. 3d 7, § 4 (1969) (collecting cases regarding the right of an employee to use general knowledge and experience gained in former employment).

[40] K.H. Larsen, Annotation, Former employee's duty, in absence of express contract, not to solicit former employer's customers or otherwise use his knowledge of customer lists acquired in earlier employment, 28 A.L.R. 3d 7, § 4[a] (Cumulative Supp.):

> Courts have universally recognized the former employee's right to use, in competition with his former employer, general knowledge, skill, and experience acquired in the former employment.

Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 652 (1960) (footnotes omitted):

> It has been uniformly held that general knowledge, skill, or facility acquired through training or experience while working for an employer appertain exclusively to the employee.  The fact that they were acquired or developed during the employment does not, by itself, give the employer a sufficient interest to support a restraining covenant, even though the on-the-job training has been extensive and costly.  In the absence of special circumstances the risk of future competition from the employee falls upon the employer and cannot be shifted, even though the
> (continued)

Manitowoc Company employees to accept employment with a competitor of the Company.[41] The court has declared that "[a]n employer is not entitled to be protected against legitimate and ordinary competition of the type that a stranger could give."[42]

¶50 Manitowoc Company drafted the non-solicitation of employees provision and could have tailored the language to its specific needs. It does not argue that the non-solicitation of employees provision is limited to Lanning's solicitation of only certain employees. Manitowoc Company does not contend that it intended to limit the words to apply only to the solicitation of employees with sensitive or company-specific information or to

---

possible damage is greatly increased by experience gained in the course of the employment.

McHugh, 28 S.W.3d at 350:

[An employer does not have a proprietary interest in its employees at will or in their skills.] The normal skills of a trade are not included in an employer's protectable interest. Thus, the basic skill of a craftsman will not support a restrictive covenant. . . . The fact of an employer-employee relationship, standing alone, is not sufficient to cause a confidential relationship to exist as to knowledge which is the natural product of the employment.

For a collection of cases, see 3 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 16:44 (4th ed. Cum. 2017).

[41] Lakeside Oil, 8 Wis. 2d at 163.

[42] Lakeside Oil, 8 Wis. 2d at 163; see also Star Direct, 319 Wis. 2d 274, ¶56 (citing Lakeside).

27

the solicitation of employees with whom Lanning has worked or to those employees with skill sets with which Lanning was familiar.

¶51  Rather, Manitowoc Company argues that the court should apply a "sliding scale" to gauge whether the non-solicitation provision meets the prerequisites of Wis. Stat. § 103.465, maintaining that because the non-solicitation of employees provision is less onerous than a traditional covenant not to compete, it should receive less-exacting scrutiny.  In other words, the Company argues that a less burdensome non-solicitation of employees provision should not be held to the same legal requirements as a traditional covenant not to compete.[43]

¶52  The sliding scale, Manitowoc Company argues, would recognize that significant restrictions imposed on an employee place a significant burden on the employer to justify the restriction by showing that the restriction is no broader than is necessary to protect a legitimate business interest.[44]  Less significant restrictions imposed on an employee should place a less significant burden on the employer to justify the restriction, Manitowoc Company argues.

¶53 We reject Manitowoc's proposed "sliding scale" approach that would subject various restraints of trade and competition

---

[43] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 41.

[44] Brief of Plaintiff-Respondent-Petitioner The Manitowoc Company, Inc. at 42.

to different legal standards. The sliding scale approach has no basis in Wisconsin law.

¶54 Wisconsin Stat. § 103.465 does not create separate legal standards applicable to traditional and non-traditional non-compete provisions. Our legislature has balanced the employer's business needs and the employee's interest in personal liberty under § 103.465 and has declared that if an agreement imposes an unreasonable restraint, it is illegal, void, and unenforceable even as to so much of the covenant as would be a reasonable restraint. We are bound by the legislature's decision.

¶55 Because Lanning's non-solicitation of employees provision restrains trade by restraining competition and inhibiting the mobility of employees, it must meet all five prerequisites identified in Lakeside Oil and Star Direct in order to be enforceable under Wisconsin law. Manitowoc Company has the burden to prove that Lanning's non-solicitation of employees provision meets all five prerequisites.[45]

¶56 The plain language of Lanning's non-solicitation of employees provision creates a sweeping prohibition that prevents Lanning from encouraging any Manitowoc Company employee, no matter the employee's job or location, to terminate his or her employment with Manitowoc Company for any reason, or soliciting

---

[45] Star Direct, 319 Wis. 2d 274, ¶20.

29

any Manitowoc Company employee to take any position with any competitor, supplier, or customer of Manitowoc Company.

¶57  Lanning does not have specialized knowledge about all of Manitowoc Company's 13,000 world-wide employees across both its construction crane and food service equipment divisions. Lanning does not have a relationship with every Manitowoc Company employee.  Yet Lanning's non-solicitation of employees provision prevents him from encouraging any Manitowoc Company employee to terminate his or her employment.

¶58  Noting the extensive reach of the language of the non-solicitation of employees provision, the court of appeals explained that "Manitowoc has drafted a provision that requires it to prove that it has a protectable interest in preventing Lanning from encouraging any employee to leave Manitowoc for any reason, or to take any job with any competitor, supplier, or customer."  Lanning, 371 Wis. 2d 696, ¶30.

¶59  In applying the prerequisites that must be met under Wis. Stat. § 103.465, we conclude, as did the court of appeals, that the non-solicitation of employees provision is overbroad on its face.  Without a specified territory or class of employees, the provision restricts Lanning's conduct as to all employees of Manitowoc Company everywhere.  Lanning's non-solicitation of employees provision covers each of the 13,000 Manitowoc Company employees regardless of the business unit in which they work or where in the world they are located.

¶60  We agree with the court of appeals that Manitowoc Company has failed to satisfy the first prerequisite, namely

that Manitowoc Company does not have a protectable interest justifying the restriction imposed on the activity of the employee. Because our conclusion as to the first prerequisite is dispositive, we need not and do not consider the other four prerequisites.

¶61 The non-solicitation of employees provision cannot survive simply because Manitowoc Company seeks to enforce the non-solicitation provision in the instant case in a narrower situation than that which is compelled by the plain language of the agreement.[46] Enforcing an overbroad restraint to the extent it can be reasonably enforced is exactly what § 103.465 was enacted to prevent.

¶62 A non-solicitation of employees provision may be enforceable under Wis. Stat. § 103.465 if it is reasonably necessary to protect the employer and reasonable as to time, geography, and type of conduct covered.[47] Manitowoc Company failed to show that it has a protectable interest justifying the sweeping restriction imposed by the plain language on Lanning's non-solicitation of employees. Lanning's non-solicitation provision does not meet the prerequisites under § 103.465.

¶63 For the reasons set forth, we conclude that Wis. Stat. § 103.465 applies to Lanning's non-solicitation of employees provision. Because Lanning's non-solicitation of employees

---

[46] Manitowoc Co., 371 Wis. 2d 696, ¶19.

[47] Lakeside Oil, 8 Wis. 2d at 163-67.

provision does not meet the statutory requirement that the restriction be "reasonably necessary for the protection of the employer," it is an unreasonable restraint of trade unenforceable under the statute.

¶64 Accordingly, the cause is remanded to the circuit court with instructions to enter judgment in favor of Lanning.

*By the Court.*—The decision of the court of appeals is affirmed.

¶65 REBECCA GRASSL BRADLEY, J.   (concurring).  I join the lead opinion's decision affirming the court of appeals and its holding that Wis. Stat. § 103.465, entitled "Restrictive covenants in employment contracts," applies to Lanning's nonsolicitation of employees covenant (NSE).  I also agree that this NSE is unreasonable under the Lakeside Oil[1] prerequisites. I write separately because the lead opinion neglects to undertake a textual analysis of § 103.465, instead grounding its interpretation of the statute almost exclusively in Wisconsin case law in which the court has interpreted and applied § 103.465 expansively, sometimes straying far from the text in advancing policy choices that should be made legislatively, not judicially.  For example, the lead opinion liberally cites Heyde Cos., Inc. v. Dove Healthcare, LLC, 2002 WI 131, 258 Wis. 2d 28, 654 N.W.2d 830, which should be overruled as unsound in principle because its analysis is patently wrong.  Additionally, I caution that merely because the court concludes § 103.465 applies to this NSE, not every NSE provision necessarily falls under the purview of that statute.

I

¶66 The lead opinion skips the critical first step of statutory analysis——examining the plain language of the text. In abandoning this process, the lead opinion risks reading into Wis. Stat. § 103.465 imagined words derived from the court's perception of the legislature's unspoken policies and purpose.

_____

[1] Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 98 N.W.2d 415 (1959).

Of course, legislative policies and purpose may aid the court in its interpretative function, but only to the extent they are discernable from the actual text of the statute.[2]

¶67 For this reason, statutory analysis must begin with the plain language of the statute. State ex rel Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citations omitted). Where "the meaning of the statute is plain, we ordinarily stop the inquiry."[3] Id. (citations omitted). Generally, statutory meaning comes from examining the text, context and structure of the statute. See Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶20 n.15, 373 Wis. 2d 543, 892 N.W.2d 233.

¶68 The text of Wis. Stat. § 103.465 is relatively plain. For the most part, the dissent correctly and succinctly examines the relevant words and their ordinary meanings. Dissent, ¶¶10-14. In summary and in the context of the facts presented here,

---

[2] "[T]he purpose must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012).

[3] The court does not consult extrinsic sources unless the statute is ambiguous, that is to say, "it is capable of being understood by reasonably well-informed persons in two or more senses." State ex rel Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

§ 103.465 governs only covenants between an employer and its employee in which the employee agrees not to compete with the employer. The enforceability of such a covenant depends in part upon the inclusion of limits on its duration and territorial scope. Its restrictions must also be "reasonably necessary for the protection of the employer."

¶69 The crux of the issue presented in this case is whether this NSE constitutes a covenant not to compete within the meaning of Wis. Stat. § 103.465. While I agree with the lead opinion's conclusion that § 103.465 governs this NSE, I depart from its over-expansive analysis of the statute.

¶70 Because this court has never applied the statute to an NSE between an employer and an employee, it is fundamental to first identify what an NSE is. Black's Law Dictionary defines a "nonsolicitation agreement" as "[a] promise . . . in . . . an employment contract, to refrain, for a specified period of time, from . . . enticing employees to leave a company." Nonsolicitation agreement, Black's Law Dictionary 1221 (10th ed. 2014). Here, Lanning entered into a nonsolicitation agreement by promising that he would "not (either directly or indirectly) solicit, induce, or encourage any employee(s) to terminate their employment with Manitowoc or to accept employment with any competitor, supplier or customer of Manitowoc."

¶71 In order to determine if this NSE may be subject to close scrutiny under Wis. Stat. § 103.465, I begin with the types of restrictive covenants the text of the statute covers. The first sentence of the statute identifies as its subject

3

matter "[a] covenant . . . not to compete." The dissent defines "compete" as "the struggle for commercial advantage," equating competition with actions by an employee laboring for commercial advantage over his or her employer. This definition broadly encompasses all sorts of restrictive covenants. The dissent, however, does not consider the phrase "covenant not to compete" as a legal term of art.

¶72 Black's Law Dictionary defines "covenant not to compete" as "[a]n agreement, generally part of a contract of employment . . . in which the covenantor agrees for a specific period of time and within a particular area to refrain from competition with the covenantee." Covenant not to compete, Black's Law Dictionary 364 (6th ed. 1990). The title of Wis. Stat. § 103.465 also refers to covenants not to compete as "Restrictive covenants in employment contracts."[4] In the context of an employment contract, Black's Law Dictionary defines "[r]estrictive covenant" as a provision that "limit[s] a contracting party after termination of the contract in performing certain work for a period of time within a certain

---

[4] Under Wis. Stat. § 990.001(6), "titles to subchapters, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes." "Although titles are not part of statutes, see Wis. Stat. § 990.001(6), they may be helpful in interpretation. Nevertheless text must control over title." Aiello v. Village of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996). "The title and headings [of a statute] are permissible indicators of meaning" although "a title or heading should never be allowed to override the plain words of a text." Scalia & Garner, supra note 2, at 221-22. Here, the title and the text are harmonious.

4

geographic area." Restrictive covenant, id. at 1315. While the NSE does not altogether prohibit Lanning from going to work for a competitor, it does restrain Lanning from soliciting, inducing, or encouraging any Manitowoc employee from accepting employment with any Manitowoc competitor, thereby limiting Lanning in performing certain work——namely, recruitment for his new employer, a competitor of Manitowoc's. Notwithstanding the NSE's label, it constitutes a restrictive covenant by an employee not to engage in a particular form of competition with the employer both during his employment and for a two-year period after his employment ends. Accordingly, Lanning's NSE is a type of covenant "described in this section" under § 103.465.

¶73 The dissent reaches the opposite conclusion but errs in adopting a cramped construction of what it means to "compete" with a former employer. Proposing a definition of competition as "the struggle for commercial advantage," the dissent then inexplicably asserts the NSE "protects against only the raiding of Manitowoc's key employees by Lanning" but "does not prevent Lanning from competing with Manitowoc." Dissent, ¶38. The dissent thereby narrowly rewrites the scope of the NSE, which is clearly much broader. By its very terms, the NSE applies not only to key employees but "any employee(s)" and the NSE prohibits not only "raiding" of "key" employees but also, for example, encouraging an entry-level employee to terminate his or her employment to pursue higher education. For this reason (among others), the lead opinion correctly concludes that the NSE is not reasonably necessary for Manitowoc's protection as

5

Manitowoc cannot demonstrate a protectable interest in prohibiting Lanning from encouraging an unskilled Manitowoc employee to retire in order to spend more time with family (an example aptly stated by the court of appeals in this case). Manitowoc Co. v. Lanning, 2016 WI App 72, ¶24, 371 Wis. 2d 696, 885 N.W.2d 798.

¶74 The dissent proceeds to adopt the internally contradictory position of Manitowoc. On one hand, it notes that "Lanning and SANY's recruitment efforts were successful. Key employees left Manitowoc and joined SANY." Dissent, ¶6. The dissent accurately identifies the adverse effect on the employer (here, Manitowoc): "the former employer will become a less effective competitor." Dissent, ¶45. Nonetheless, the dissent views Lanning's role as something other than competing with Manitowoc despite the obvious "commercial advantage" to Lanning individually in enhancing his new employer's competitive position in the marketplace at the expense of Manitowoc. Contrary to the dissent's construction, nothing in the text of Wis. Stat. § 103.465 restricts its application to covenants not to work for the employer's competitor and nothing in the statutory text exempts covenants not to compete on behalf of the employer's competitor. Logically, recruiting Manitowoc employees to join a Manitowoc competitor is a form of competition by Lanning and that aspect of the NSE's restriction subjects it to the close scrutiny of § 103.465.

II

6

¶75 While the dissent's interpretation of Wis. Stat. § 103.465 is too restrictive, the lead opinion errs in the other direction. Typically relying on the second sentence of Wis. Stat. § 103.465, referring to "any covenant described in this section imposing an unreasonable restraint," this court over time opened wide the semantic door through which an assortment of restrictive covenants were brought under § 103.465's purview. See lead op., ¶¶6-8; Tatge v. Chambers & Owen, Inc., 219 Wis. 2d 99, 112, 579 N.W.2d 217 (1998) (reasoning that it "would be an exercise in semantics to overlook" § 103.465's applicability to different types of restrictive covenants "merely because . . . the agreement is not labeled a 'covenant not to compete'"). For example, in Heyde the court concluded that a no-hire provision between two companies "acts as a restrictive covenant on [the covenantee's] employees" even though the covenant was not made in an employment contract and was not otherwise made by any employee; therefore, it could not possibly constitute a "covenant described in this section," regardless of whether it in effect operated to restrict the employment opportunities of the covenantee's employees.

¶76 The plain language of Wis. Stat. § 103.465 applies only to certain covenants between an employer and its "assistant, servant or agent." As the dissent notes, "servant" encompasses an employee. Dissent, ¶11. Nothing in the text intimates an extension of its application beyond the employer-employee relationship. Nonetheless, the court in Heyde set the statutory text aside and divined an overriding statutory

7

"purpose" that could be advanced only by ignoring certain words in the statute so as to capture contracts between two businesses within the ambit of § 103.465. Relying on Heyde, the lead opinion in this case lends continued but unwarranted credence to Heyde's erroneous application of the statute by concluding "Lanning's nonsolicitation of employees provision is a restraint of trade governed by Wis. Stat. § 103.465" because "the limitation on Lanning also affects access to the labor pool by a competitor of Manitowoc Company (including, Lanning's current employer SANY America)" and "hinders the mobility of Manitowoc Company employees." Lead op., ¶¶9, 33.

¶77 The lead opinion mistakenly emphasizes a relationship not contemplated by the statute, namely one between two employers, SANY and Manitowoc, as well as the NSE's effect on the mobility of Manitowoc employees generally. Other than Lanning himself, no SANY or Manitowoc employees are party to the NSE; therefore, neither SANY nor Manitowoc workers are considerations in applying Wis. Stat. § 103.465. Accordingly, we should not base our interpretation of the statute on the NSE's effect, if any, on SANY's ability to compete with Manitowoc or the mobility of its workers generally. The focal relationship under § 103.465 is the one between the employer, Manitowoc, and the employee, Lanning. In basing part of its determination regarding the statute's applicability on SANY's ability to compete and Manitowoc employees' mobility, the lead opinion further widens the rabbit hole encircling Wis. Stat. § 103.465 by extending the statute beyond the only contract

8

mentioned in the statute——a covenant between an employer and its assistant, servant, or agent.

¶78 Because <u>Heyde</u> provides the foundation for courts to disregard the plain language of Wis. Stat. § 103.465 in order to apply it inappropriately in the name of good public policy, I would overrule it as unsound in principle. Decisions to overrule prior case law depend on the presence of one or more of the following circumstances:

> (1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency in the law; (4) the prior decision is "unsound in principle;" or (5) the prior decision is "unworkable in practice."

<u>Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Servs. Ins. Corp.</u>, 2006 WI 91, ¶33, 293 Wis. 2d 38, 717 N.W.2d 216 (citing <u>Johnson Controls, Inc. v. Employers Ins. of Wausau</u>, 2003 WI 108, ¶¶98-99, 264 Wis. 2d 60, 665 N.W.2d 257). Although principles of statutory interpretation predating <u>Kalal</u> "generat[ed] some analytical confusion," 271 Wis. 2d 633, ¶43, the basic tenets of plain language interpretation were well established when this court decided <u>Heyde</u>. See, e.g., <u>Moorman Mfg. Co. v. Indus. Comm'n</u>, 241 Wis. 200, 208, 5 N.W.2d 743 (1942)("The meaning of a legislative act must be determined from what it says——not by what the framer of the act intended to say or what he thought he was saying."); <u>Nekoosa-Edwards Paper Co. v. Pub. Serv. Comm'n</u>, 8 Wis. 2d 582, 591, 99 N.W.2d 821 (1959) ("The meaning of a legislative act must be determined from the language used."); <u>Kalal</u>, 271 Wis. 2d 633, ¶45; <u>Wisconsin Carry,</u>

9

Inc., 373 Wis. 2d 543, ¶20 n.15.  See generally Daniel Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969 (2017).

¶79 This court began its analysis in Heyde by acknowledging that Wis. Stat. § 103.465 "only refers to covenants between employers and employees"; nevertheless, it wholly ignored this language in favor of a liberal construction to achieve what it deemed the legislature's purpose underlying the statute.  258 Wis. 2d 28, ¶13-15.  The text of the statute, however, is devoid of any mention of this "purpose."  In adopting this interpretation, the Heyde court deviated from what already was a fundamental principle of statutory construction——interpreting a statute to mean what the text actually says.

¶80 The Heyde court justified its application of the statute to a no-hire provision in a services contract between two businesses because by "restricting one employer's ability to hire former employees of the other employer," by "indirection," the covenant restricted "the employees' future opportunities of employment."  Heyde, 258 Wis. 2d 28, ¶14; id., ¶28 (Abrahamson, J., concurring).  This interpretation flouted the statute's language in order to favor "those intended to benefit from" Wis. Stat. § 103.465, never mind the statute's utter silence on whom the legislature intended to advantage.  Id., ¶15.

¶81 Indeed, until Heyde, no Wisconsin court had ever applied Wis. Stat. § 103.465 to any restrictive covenant other than those "by an assistant, servant or agent not to compete with his or her employer or principal."  The Heyde court boldly labeled this unprecedented leap beyond the plain text

10

"inconsequential." Id., ¶14. The Heyde court's failure to give effect to the actual words of the statute in order to advance judicial notions of the public interest propels the lead opinion in this case along an unsound analytical path. Although the lead opinion correctly concludes that § 103.465 applies to Lanning's NSE, it incorrectly supports its conclusion with Heyde's shaky reasoning: because the NSE hinders the mobility of Manitowoc employees and affects SANY's ability to compete with Manitowoc, the statute applies. In order to steer the scope of § 103.465 back to its textual bounds, I would overrule Heyde as unsound in principle and reinstitute a plain language interpretation of the statute, confining its application to an employee's covenant not to compete with an employer.[5]

---

[5] The people of Wisconsin should be wary of the lead opinion's suggestion that prior judicial interpretations of a statute become set in stone once decreed. Lead op., ¶31 n.26. Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens the rule of law, particularly when applied to interpretations wholly unsupported by the statute's text. In evaluating whether to persist in upholding a decision that elevated judicially-imagined legislative purpose over the words the legislature actually enacted, "[i]t is well to keep in mind just how thoroughly [the court's opinion] rewrote the statute it purported to construe." Johnson v. Transp. Agency, 480 U.S. 616, 670 (1987) (Scalia, J., dissenting). When a judicial opinion like Heyde replaces the words the legislature actually wrote with language the court preferred, in advancing the court's own policy choices, courts of last resort are duty-bound to correct the prior court's error.

(continued)

11

¶82 The dissent warns that the outcome of the lead opinion's holding will leave employers "unable to prevent raiding of their key employees by a former employee." Dissent, ¶45. Employers are not so hamstrung. The NSE Lanning signed could have been narrowly drawn to protect a legitimate interest of Manitowoc and to satisfy the other prerequisites identified in Lakeside Oil. Finally, while the court concludes that Wis. Stat. § 103.465 applies to Lanning's NSE, this conclusion should not be interpreted to mean that § 103.465 will categorically

---

Finally, the lead opinion's conclusion that we can glean anything from the legislature's inaction in the 15 years following Heyde has long been discredited. "[I]t [is] impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice." Id. at 672. "[E]ven if we were prepared to let members of Congress authoritatively express their collective ratification of a judicial decision without using the formal legislative process, the failure to pass an override bill is weak evidence of any such collective ratification. In most cases, it is easy to imagine that Congress would not have overridden the opposite decision either. After all, enacting a new statute is a lot harder than not enacting a new statute." Caleb Nelson, Stare Decisis and Demonstrably Erroneous Precedents, 87 Va. L. Rev. 1, 77 (2001). The lead opinion invokes the importance of promoting finality and predictability in the law in its application of stare decisis to Heyde. However, Heyde "is a demonstration not of stability and order, but of the instability and unpredictable expansion which the substitution of judicial improvisation for statutory text has produced." Johnson, 480 U.S. at 672. Because Heyde's interpretation of Wis. Stat. § 103.465 finds no mooring in statutory text, it does not deserve the status of inalterable law that stare decisis would afford it.

12

apply to every NSE. Applying § 103.465 to a particular restrictive covenant always requires a fact-specific inquiry.

¶83 I agree with the lead opinion that Wis. Stat. § 103.465 applies to this NSE, and under the Lakeside Oil prerequisites, it is unreasonable and therefore unenforceable. Because the lead opinion looks beyond the text of the statute to consider the effect of this NSE on Manitowoc's workforce and competitors rather than solely the employee restrained by the covenant, I respectfully concur.

¶84 I am authorized to state that Justices MICHAEL J. GABLEMAN and DANIEL KELLY join this concurrence.

13

¶85 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting)*. The lead opinion distorts the plain meaning of Wis. Stat. § 103.465, thereby changing it from a statute that balanced the rights of employees and their employers into a broad mandate that prevents employers from protecting their businesses from third-party raiding. In so doing, it permits John M. Lanning to assist SANY America, Inc. in cherry picking Manitowoc Company, Inc.'s key employees and thereby reduces the competition that Manitowoc would otherwise be able to exert against SANY, as both compete in the same marketplace.

¶86 Because I conclude that the Non-Solicitation of Employees (NSE) clause in Lanning's employment contract with Manitowoc does not come within the plain meaning of Wis. Stat. § 103.465 and is enforceable, I respectfully dissent.

## I. BACKGROUND

¶87 Manitowoc, a Wisconsin employer, participates in a global market, where one of its divisions manufactures and services large cranes. Lanning was a contract employee of Manitowoc's crane division, where he worked as an engineer for more than 24 years. During his employment he signed several contracts of employment with Manitowoc; however, all parties agree that the contract at issue here was signed August 11, 2008.

¶88 Manitowoc was concerned with protecting its confidential information that permitted it to compete in a global marketplace, and it emphasized that concern in Lanning's employment contract. The NSE clause in Lanning's contract with

1

Manitowoc was preceded by the following acknowledgement that was set out in all caps:

> I AM EMPLOYED OR MAY BE EMPLOYED BY MANITOWOC IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL INFORMATION. IN CONSIDERATION OF SUCH EMPLOYMENT OR CONTINUED EMPLOYMENT, AND THE WAGES, SALARY OR COMMISSIONS AND OTHER EMPLOYEE BENEFITS IN COMPENSATION FOR MY SERVICES, AND IN CONSIDERATION OF BEING GIVEN ACCESS TO CONFIDENTIAL INFORMATION, I AGREE TO ALL OF THE FOLLOWING:

¶89 As a Manitowoc employee who had access to Manitowoc's confidential information, Lanning agreed:

> (2) <u>Non-Solicitation of Employees.</u> I agree that during my Employment by Manitowoc and for a period of two years from the date my Employment by Manitowoc ends for any reason, including termination by Manitowoc with or without cause, I will not (either directly or indirectly) solicit, induce or encourage any employee(s) to terminate their employment with Manitowoc or to accept employment with any competitor, supplier or customer of Manitowoc.

¶90 In January 2010, Lanning terminated his employment with Manitowoc and went to work for SANY, a worldwide competitor of Manitowoc's crane division. Shortly after joining SANY, Lanning and SANY began an aggressive attack on Manitowoc, as SANY attempted to hire Manitowoc's skilled employees. For example, Lanning took a Manitowoc employee to lunch during SANY's recruitment efforts. He accompanied another employee on a SANY plant tour in China and participated in SANY interviews of Manitowoc employees. Lanning and SANY's recruitment efforts were successful. Key employees left Manitowoc and joined SANY.

¶91 Lanning has not denied that he violated the NSE clause in his employment contract. The circuit court found that he

2

breached his contract with Manitowoc and awarded compensatory damages. The court of appeals reversed.

## II. DISCUSSION

### A. Standard of Review

¶92 This case turns on the interpretation and potential application of Wis. Stat. § 103.465. Statutory interpretation and application present questions of law that we decide independently, while benefitting from the analyses of the court of appeals and the circuit court. DeHart v. Wis. Mut. Ins. Co., 2007 WI 91, ¶8, 302 Wis. 2d 564, 734 N.W.2d 394.

### B. Statutory Interpretation

#### 1. General principles

¶93 The purpose of statutory interpretation is to determine the statute's meaning so that we can give the statute its proper effect. Id., ¶12 (citing State ex rel Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). We begin with the language chosen by the legislature. Kalal, 271 Wis. 2d 633, ¶45. Statutory words are given their plain and ordinary meaning unless they are technical terms or have specific definitions within the statute. Id. If the meaning of the statute is apparent from the plain meaning of the words chosen by the legislature, we ordinarily stop our analysis and apply that plain meaning to the questions presented for our review. Id. We may use legislative history to confirm a plain meaning interpretation. Id., ¶51.

2. Wisconsin Stat. § 103.465

¶94 We interpret and consider whether to apply Wis. Stat. § 103.465, which provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

¶95 The "covenant" addressed in Wis. Stat. § 103.465 is the promise made by an "assistant, servant or agent" and is limited in scope in that he or she promises "not to compete" with "his or her employer" while employed by the employer or, in specified circumstances, after that employment has ended. An employee is an individual included within the statute's protection of "servant." Romero v. West Bend Mut. Ins. Co., 2016 WI App 59, ¶39, 371 Wis. 2d 478, 885 N.W.2d 591 (citing Restatement (Second) of Agency § 220 cmt. g. (1958) ("explaining that 'servant' and 'employee' are interchangeable terms")).

¶96 The statutory language is limited in regard to whom it applies. That is, Wis. Stat. § 103.465 applies only to the employee who signs a contract containing such a covenant and "his or her employer." A plain reading of the statute shows that the statute is not to be read as applying to a universe of employers, but rather, it is directed at one particular employer.

4

¶97 "To compete" is not defined within the statute. Black's Law Dictionary defines competition as, "the struggle for commercial advantage." Black's Law Dictionary 322 (9th ed. 2009). Accordingly, competition equates with those actions by an employee that evince the struggle for commercial advantage of the employee over his or her employer.

¶98 The statute also says that "any covenant described in this section," i.e., a covenant by an employee not to compete with his or her employer, that imposes an "unreasonable restraint" is not enforceable. On whom do we focus to determine if the covenant is an "unreasonable restraint?" Plainly, we focus on the effect of the covenant on the employee because it is the individual employee who made the promise to be restrained in his or her actions.

¶99 It is important to note that the term "trade" is nowhere to be found in Wis. Stat. § 103.465. Nor should it be implied because the restraint that § 103.465 addresses is plainly the restraint of the employee who signed the NSE agreement. As I will explain in some detail below, it is not a broad restraint of trade that is referenced in § 103.465, even though some opinions casually incorporate that term.[1]

---

[1] The court of appeals specifically interpreted the term "restraint" in Wis. Stat. § 103.465 as restraining trade. Manitowoc Company, Inc. v. Lanning, 2016 WI App 72, ¶14, 371 Wis. 2d 696, 885 N.W.2d 798. This interpretation goes far beyond what a plain reading of the statute permits and creates a universe of persons to which § 103.465 may be applied that is much broader than that which the legislature created.

¶100 A restraint of trade is prohibited under the provisions of Wisconsin Statutes ch. 133. A restraint of trade has a broad focus. For example, Wis. Stat. § 133.01 is grounded in a different scope of coverage and has a different analysis for alleged violations than does Wis. Stat. § 103.465. Alleged restraints of trade are examined under the "rule of reason," wherein Wisconsin courts follow federal court analyses of alleged violations of section 1 of the Sherman Antitrust Act. Indep. Milk Producers Co-op v. Stoffel, 102 Wis. 2d 1, 6-7, 298 N.W.2d 102 (Ct. App. 1980). Restraints of trade involve such matters as monopolies, that inhibit competition, sometimes vertically and sometimes horizontally, but on a broad basis. See Olstad v. Microsoft Corp., 2005 WI 121, ¶¶13, 14, 284 Wis. 2d 224, 700 N.W.2d 139.

¶101 By inserting "restraint of trade" language into our opinions, we have moved little by little away from Wis. Stat. § 103.465's plain meaning, which addresses only the restraint of an employee. In so doing, we have incrementally broadened what the legislature chose to regulate under § 103.465. We did so with a casual reference to a broad doctrine, restraint of trade, without reasoning whether § 103.465 actually proscribed a restraint of trade or something more narrow.

¶102 For example, in 1959, in Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 98 N.W.2d 415 (1959), we were presented with an injunction against a former employee that enforced a covenant not to compete. Slutsky contended that the covenant was a restraint of trade and therefore was illegal. Id. at 161. In

6

deciding whether the injunction was properly placed, we evaluated the employment contract in light of controlling statutes. We concluded, the "contract on its face is not illegal." Id. The statute to which we referred when we reviewed whether a "restraint of trade" had occurred was Wis. Stat. § 133.01. Id. It was not Wis. Stat. § 103.465. However, we noted later in the opinion that in 1957 the legislature had enacted § 103.465. Id. at 161-62. We then went on to examine the effect of the non-compete on the employer and employee, at times drawing in antitrust concerns that are properly analyzed under § 133.01, but not under § 103.465. Id. at 167.

¶103 In Behnke v. Hertz Corp., 70 Wis. 2d 818, 235 N.W.2d 690 (1975), we addressed a non-compete agreement that National Car Rental required of its employee, Barbara Kreft. The agreement provided:

> I agree not to work for any car rental competitor in the city of Milwaukee for one year if and when this present job is terminated.

Id. at 820.

¶104 We began our discussion in Behnke by recognizing that the contract provision at issue was controlled by Wis. Stat. § 103.465. Id. We then mused about various contract provisions spoken to in Restatement (Second) Contracts, picking up "restraint of trade" language from the Restatement. Id. at 821. We did not discuss whether a restraint of trade was a broader concept than a restraint of an employee; the question was never presented.

7

¶105 In Zimmermann v. Brennan, 78 Wis. 2d 510, 254 N.W.2d 719 (1977), we examined whether a profit sharing plan provision was unenforceable under Wis. Stat. § 103.465 when it provided that Zimmermann would lose the unpaid portion of his vested interest if he became employed by a "competitive business." Id. at 512. Zimmermann alleged that "the forfeiture provision contained in the plan constituted an unreasonable restraint of trade under sec. 103.465, Stats.," using the broad "restraint of trade" language found in earlier opinions. Id. Although the trial court found the provision was an unreasonable restraint of trade, we opined that we need not decide whether the trial judge's conclusion was correct because the business that Zimmermann engaged in subsequent to his employment by Brennan was not a "competing business." Id. at 512-13.

¶106 In Strief v. Am. Family Mut. Ins. Co., 118 Wis. 2d 602, 348 N.W.2d 505 (1984), we concluded that a clause in an insurance agent's contract was unenforceable under Wis. Stat. § 103.465 as "an unreasonable restraint of trade." Id. at 603-04. However, the opinion actually turns on the interpretation of the contractual provisions, not on an interpretation of the scope of § 103.465. Id. at 611-12.

¶107 In Tatge v. Chambers & Owen, Inc., 219 Wis. 2d 99, 579 N.W.2d 217 (1998), we examined whether a wrongful discharge claim would lie for the discharge of an at-will employee who refused to sign a non-disclosure, non-compete agreement. Id. at 101. We assumed that the provisions sought to restrain competition, and therefore, came within Wis. Stat. § 103.465.

8

Id. at 112. We reasoned that § 103.465 "evidences a strong public policy against the enforcement of trade restraints which are determined to be unreasonable upon all employees." Id. at 114-15.

¶108 Before concluding that no claim for wrongful discharge could be made, we explained that "the validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it." Id. at 116-17 (citing Rollins Burdick Hunter of Wis., Inc. v. Hamilton, 101 Wis. 2d 460, 468, 304 N.W.2d 752 (1981) ("What is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another.")).

¶109 In Heyde Cos., Inc. v. Dove Healthcare, LLC, 2002 WI 131, 258 Wis. 2d 28, 654 N.W.2d 830, we applied Wis. Stat. § 103.465 to a contract between two corporations. Id., ¶1. We broadly stated the issue as: "whether a no-hire provision contained in a contract between employers, without the knowledge and consent of the affected employees, is unenforceable as an unreasonable restraint of trade." Id., ¶9. This broad statement of the issue permitted us to ignore the plain meaning of § 103.465, which requires an employee covenant. However, notwithstanding that little detail, i.e., the words the legislature chose, we struck down the agreement between two companies based on our expansion of § 103.465. Id., ¶13.

¶110 Star Direct, Inc. v. Dal Pra, 2009 WI 76, 319 Wis. 2d 274, 767 N.W.2d 898, is our most recent decision involving Wis. Stat. § 103.465. Star Direct involved a business non-compete

9

clause and a customer non-compete clause in Dal Pra's employment contract with Star Direct. We applied § 103.465 to both clauses. Id., ¶5. No question was raised about the applicability of § 103.465 to these clauses.

¶111 We started our analysis with the now common, broad statement: "Restrictive covenants in Wisconsin are prima facie suspect as restraints of trade." Id., ¶19. (citing Streiff, 118 Wis. 2d at 611). However, we did not expand our analysis consistent with that broad statement as we had in Heyde, but instead, we narrowly focused on the particular facts and circumstances of Star Direct and Dal Pra. We recognized the legitimate concerns of an employer when a former employee is in possession of confidential business information. Id., ¶47.

¶112 Equity Enterprises, Inc. v. Milosch, 2001 WI App 186, 274 Wis. 2d 172, 633 N.W.2d 632, contained a contract with a NSE clause. However, the court of appeals did not address whether Wis. Stat. § 103.465 applied to NSE clauses or whether it was relevant to Milosch's claim for commissions that he asserted Equity was retaining.

¶113 In Mut. Serv. Cas. Ins. Co. v. Brass, 2001 WI App 92, 242 Wis. 2d 733, 625 N.W.2d 648, the court of appeals in meeting MSI's concern that Brass's new employer, American National Ins. Co., had raided the ranks of its career agents, reasoned that NSE provisions do not come within Wis. Stat. § 103.465. Id., ¶17. The court of appeals said that "[t]he law [§ 103.465], however, does not protect against the raiding of a competitor's employees. Rather, it encourages the mobility of workers." Id.

10

In so concluding, the court of appeals affirmed that § 103.465 is focused on covenants that preclude the employee from realizing employment opportunities, but that it does not apply to all agreements that employees make with their employers.

¶114 Few states have examined NSE provisions in employment contracts. However, a provision similar to the NSE covenant at issue here was addressed in CDI Corp. v. Hough, 9 So. 3d 282 (La. Ct. App. 1 Cir. 3/27/09). Hough was a vice-president of operations for CDI. In connection with his employment he signed a NSE agreement that provided:

> For a period of twelve (12) months following the termination of your employment with the Company, you will not:
>
> (a) Directly or indirectly hire or cause to be hired, or solicit, interfere with or attempt to entice away from the Company, any individual who was an employee of the Company within six (6) months prior to such contact, solicitation, interference or enticement.

Id. at 284.

¶115 Hough and Kyzer, another employee of CDI, decided to set up a competing business. They did so and then recruited several CDI employees to go to work for their new company. Id. at 285.

¶116 CDI sought and obtained an injunction prohibiting further raiding of CDI employees. On appeal, Hough challenged the injunction, claiming that it violated a Louisiana statute that regulated non-compete agreements between employees and employers. Id. at 286.

11

¶117 The court noted that generally parties contract as they see fit, and courts "will enforce the contract as written, provided the agreement is not contrary to good morals or public policy." Id. at 287. The court then noted that the purpose of the Louisiana statute was to avoid restraints on an employee's employment opportunities, which is not a concern of an agreement not to solicit an employer's employees. Id. at 290.

¶118 The court concluded that the NSE agreement "does not prevent Mr. Hough from exercising his trade, profession, or business. In fact, the agreement assumes Mr. Hough will compete with CDI Corporation." Id. at 292. The court then concluded that the NSE agreement Hough signed with CDI is not governed by the statute raised by Hough and is enforceable. Id.

### C. The NSE Agreement

¶119 As I consider whether the NSE agreement at issue here comes within the provisions of Wis. Stat. § 103.465, I note how the statute expresses its concerns for employees. Section 103.465 plainly focuses on contractual promises of an employee "not to compete with his or her employer." The language chosen by the legislature is driven by a legislative policy choice that employees not be subjected to undue restraints on their employability or mobility. Streiff, 118 Wis. 2d at 614. Covenants that the employee not work for a competitor, supplier or customer of his or her employer come within covenants not to compete with the employee's employer.

¶120 However, Wis. Stat. § 103.465 also considers the interests of employers and their necessary business interests.

12

For example, § 103.465 does permit employers to contract for restrictions that would limit their employees employment opportunities if the restriction is reasonable in time and place and reasonably necessary to protect a business interest of the employer. Rollins Burdick, 101 Wis. 2d at 469.

¶121 Lanning's contract with Manitowoc provides: "IN CONSIDERATION OF BEING GIVEN ACCESS TO CONFIDENTIAL INFORMATION, I AGREE TO ALL OF THE FOLLOWING:." The NSE clause follows. In the contract, Lanning agreed that during his employment, and for two years thereafter, he will not try to persuade other employees of Manitowoc to leave Manitowoc or to accept employment with a competitor, supplier or customer of Manitowoc.

¶122 On its face, the NSE clause protects against only the raiding of Manitowoc's key employees by Lanning, who was given access to Manitowoc's confidential information. It does not prevent Lanning from competing with Manitowoc. He can work for whomever he chooses, including a direct competitor such as SANY, in any place, at any time. He can use all the engineering skills he possesses. He can contact customers of Manitowoc in an attempt to sell or service more cranes. Furthermore, the NSE clause does not prevent Manitowoc's other employees from leaving Manitowoc for other employment opportunities, including working for a competitor such as SANY. The NSE clause simply restrains Lanning from raiding Manitowoc's skilled employees.

¶123 I agree with the court of appeals in Brass; Wis. Stat. § 103.465 "does not protect against the raiding of a competitor's employees." That concern is not within the purview

13

of § 103.465. Stated otherwise, the NSE covenant does not come within the provisions of § 103.465 because it is not a covenant that prohibits Lanning from competing with Manitowoc.

¶124 Lanning does not question that there was consideration for the contract he signed. Courts generally honor the rights of parties to freely contract. Solowicz v. Forward Geneva Nat., LLC, 2010 WI 20, ¶34, 323 Wis. 2d 556, 780 N.W.2d 111. Accordingly, I would honor the right to freely contract and enforce the agreement Lanning made.

### D. Lead opinion

¶125 The lead opinion gets off track by asserting that Wis. Stat. § 103.465 applies to "agreements viewed as restraints of trade."[2] It cites Heyde for this proposition, and as I explained above, Heyde dealt with an agreement between two companies. See also Heyde, 258 Wis. 2d at 47 (Sykes, J., dissenting) ("The majority analyzes this case as though it were a lawsuit between an employer and a former employee, but it is not. It is a breach of contract lawsuit between two sophisticated businesses.").

¶126 The lead opinion herein creates an even broader application of Wis. Stat. § 103.465 than that created by Heyde. The lead opinion states, "§ 103.465 'essentially deals with restraint of trade . . . regardless of whether the restriction is labeled a non-disclosure provision or a covenant not to compete.'"[3] The lead concludes the NSE clause violates § 103.465

---

[2] Lead op., ¶5.

[3] Id., ¶6.

14

because it "affects access to the labor pool by a competitor of Manitowoc Company (including Lanning's current employer, SANY America)."[4] By that addition, the lead includes the effect of the NSE on non-parties to the contract. Essentially, the lead legislates new parameters for § 103.465 that are far beyond what the plain meaning of the statute can accommodate. In so doing, it sets the stage for greater and greater judicial legislating.

¶127 As I explained above, using "restraint of trade" as definitional for Wis. Stat. § 103.465, creates a much broader regulation than that chosen by the plain meaning of § 103.465, wherein "trade" is never mentioned. Using restraint of trade as the matter being regulated has permitted the Wisconsin Supreme Court to find a violation of § 103.465 in a contract between two companies, where no employee was involved. Heyde, 258 Wis. 2d at 47.

¶128 Although "restraint of trade" is a term found in many opinions, it initially was employed when a restraint of trade, i.e., a violation of Wis. Stat. § 133.01, was claimed. Lakeside Oil, 8 Wis. 2d at 158-59. While many cases repeat the words, few expand Wis. Stat. § 103.465 with them as Heyde did and as the lead opinion does here.

¶129 Employers will be harmed by the lead opinion's expansive interpretation of Wis. Stat. § 103.465 because employers will be unable to prevent raiding of their key employees by a former employee who knows which employees are

---

[4] Id., ¶9.

15

important to the former employer's operations. When such an employee joins an aggressive competitor, competition in the marketplace will be diminished because the former employer will become a less effective competitor than it was before its key employees were raided.

### III. CONCLUSION

¶130 The lead opinion distorts the plain meaning of Wis. Stat. § 103.465, thereby changing it from a statute that balanced the rights of employees and their employers into a broad mandate that prevents employers from protecting their businesses from third-party raiding. In so doing, it permits Lanning to assist SANY in cherry picking Manitowoc's key employees and thereby reduces the competition that Manitowoc would otherwise be able to exert against SANY as both compete in the same marketplace.

¶131 Because I conclude that the NSE clause in Lanning's employment contract with Manitowoc does not come within the plain meaning of Wis Stat. § 103.465 and is enforceable, I respectfully dissent.

¶132 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

16